STATE of Wisconsin EX REL.
Myrle G. HOOVER, Jr., Petitioner-Respondent,

v.

John R. GAGNON, Appellant-Petitioner.

Supreme Court

*No. 84–460. Argued April 3, 1985.—Decided May 31, 1985.*

(Also reported in 368 N.W.2d 657.)

136

For the appellant-petitioner the cause was argued by *Charles A. Bleck,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the petitioner-respondent there was a brief and oral argument by *Elizabeth E. Stephens,* assistant state public defender.

DAY, J. This is a review of an unpublished decision of the court of appeals affirming an order of the circuit court for Dodge county, Honorable Thomas W. Wells, circuit judge. The circuit court's order vacated the decision of the adjustment committee in a prison disciplinary action and remitted all punishment imposed by that committee against Myrle G. Hoover, an inmate at the Fox Lake Correctional Institution. The circuit court also ordered Mr. Hoover's record be expunged.

The issues raised on this review are:

(1) Did Mr. Hoover execute a valid waiver of his right to the formal "due process" hearing to which he was entitled under Wis. Admin. Code section HSS 303 (1980) ?

(2) If Mr. Hoover did execute a valid waiver of his right to a formal due process hearing, do the protections of Wis. Admin. Code section HSS 303.86(4) (1981), concerning witnesses who refuse to testify, apply to informal disciplinary hearings under Wis. Admin. Code section HSS 303.75 (1980) ?

(3) Was the record on return to the writ of certiorari required to contain the actual statement of a confidential inmate informant or was a summary of that actual statement sufficient?

We conclude that Mr. Hoover did waive his right to a formal due process disciplinary hearing, that HSS 303.86 (4) does not apply to informal disciplinary hearings, and that including a summary of the confidential informant's statement was sufficient and did not deprive Mr. Hoover of any rights. We, therefore, reverse the decision of the court of appeals and that of the circuit court and reinstate the decision and discipline imposed by the adjustment committee.

On July 26, 1983, at approximately 12:35 a.m., an inmate informed security officers at the Fox Lake Correctional Institution that Mr. Hoover had been attempting to take apart a bathroom window. Upon inspection the officers discovered that the screen had been cut and the window had been broken. They also discovered that one of the security screws was missing from the window frame and the paint had been scratched off several other screws.

According to the summary of the confidential statement of the inmate informant, the informant heard noises coming from the bathroom at approximately 11:00 p.m. The informant went into the hallway and observed Mr. Hoover holding an object wrapped in a rag. Approximately ten minutes later, the informant heard glass break and he looked out of the window of his room toward the source of the noise. A pane of glass was broken out of the bathroom window. The informant went into the bathroom and found Mr. Hoover loitering there. Shortly after he returned to his room, the informant heard a noise which sounded like metal straining. He again looked out of his window and saw a gloved hand grabbing the bathroom window frame. He went to the bathroom and saw Mr. Hoover standing near the window. No other inmates were present.

A security officer had seen Mr. Hoover go in and out of the bathroom several times after 11:15 p.m.

After the security officers inspected the bathroom, they inspected Mr. Hoover's room. They found Mr. Hoover lying face down upon his bed, fully dressed and wearing his work boots. In his room the security officers found a pair of work gloves, a fingernail clippers which had been altered so that the file end would fit one hole in the security screws in the window, a belt in which the buckle was covered with masking tape, and a bent nail.

In the bathroom the officers found a brass squeegee wrapped in a towel.

Mr. Hoover claimed that he wore his clothes to bed to lose weight. He also claimed that he wore his shoes to bed to ease the pain of his migraine headaches.

A conduct report was filed on July 26, 1983, charging Mr. Hoover with attempted escape in violation of Wis. Admin. Code section HSS 303.22(a)–A (1980) [1] and damage to property in violation of Wis. Admin. Code section HHS 303.35 (1980).[2] On July 28, 1983, Mr. Hoover signed a form waiving his right to a formal disciplinary hearing. On July 29, 1983, the disciplinary hearing was

[1] "HSS 303.06 Attempt. (1) An inmate is guilty of attempt to violate a rule if the following are all true:

"(a) The inmate intended to do something which would have been a rule violation; and

"(b) The inmate did acts which showed that he or she intended to violate the rule at that time.

"(2) The number used for attempts in recordkeeping and conduct reports shall be the offense's number plus the suffix A.

"(3) The penalty for an attempt may be the same as for the completed offense. See Table, HSS 303.84."

"HSS 303.22 Escape. (1) An inmate who does any of the following without permission and with the intent to escape is guilty of an offense:

"(a) Leaves an institution;

"(b) Leaves the custody of a staff member while outside of the institution;

"(c) Does not follow his or her assigned schedule; or

"(d) Leaves the authorized area to which he or she is assigned and does not return promptly.

"(2) Any inmate who makes or posseses any materials with the intent to use them to escape is guilty of an offense."

[2] "HSS 303.35 Damage or alteration of property. (1) Any inmate who intentionally damages, destroys or alters any property of the state or of another person without authorization is guilty of an offense.

"(2) Any inmate who intentionally damages, destroys or alters his or her own property without the permission of the supervisor of his or her own living unit is guilty of an offense."

held and the adjustment committee found Mr. Hoover guilty of both charges.[3]

Mr. Hoover filed a petition for writ of certiorari. The writ was issued by the circuit court and filed on October 21, 1983. A certified return to the writ was filed on November 1, 1983.

On January 31, 1984, the circuit court filed a memorandum decision and an order which vacated the decision of the adjustment committee, remitted the discipline imposed against Mr. Hoover, and ordered that Mr. Hoover's record concerning the charges be expunged. The court of appeals, in its opinion filed September 4, 1984, affirmed the order of the circuit court. This court accepted this review to determine if Mr. Hoover executed a valid waiver of his right to a formal "due process" hearing, whether the provisions of HSS 303.86(4) apply to informal hearings, and whether in the context of this informal hearing the actual statement of the confidential inmate informant was required to be part of the certified return to the writ.

In reviewing the committee's order on certiorari the reviewing court is limited to determining: (1) Whether the committee kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable; and (4) whether the evidence was such that it might reasonably make the order or determination in question. *State ex rel. Staples v. DHSS,* 115 Wis. 2d 363, 369, 370, 340 N.W.2d 194 (1983).

## (1) *WAIVER*

Disciplinary proceedings involving inmates within the custody of the Division of Corrections are governed by

---

[3] As punishment, Mr. Hoover was given six days of adjustment segregation and three hundred sixty days of program segregation.

Wis. Admin. Code section HSS 303 (1980). HSS 303 provides that an inmate accused of a major violation of its provisions is entitled to a formal or "due process" disciplinary hearing.[4] The disposition of a major offense, including the requirements of the formal hearing,[5] is governed by HSS 303.76 to HSS 303.84. Wis. Admin. Code section HSS 303.64(c) (1980).[6] The parties in this case do not dispute that the formal "due process" hearing provided by HSS 303 does comply with the minimum requirements of the due process clause of the Fourteenth Amendment for prison disciplinary proceedings as delineated in *Wolff v. McDonnell*, 418 US 539 (1974).[7] The

---

[4] "**HSS 303.76 Hearing procedure for major offenses—notice.** When an inmate is alleged to have committed a major violation and the security director has reviewed the conduct report pursuant to HSS 303.64, the following procedure shall be followed: . . .

"(4) The inmate shall be informed that he or she has a right to a due process hearing or that he or she may waive this right in writing."

[5] To prevent possible confusion with constitutional due process, we refer to the "due process" hearing under HSS 303 as a formal hearing.

[6] "**HSS 303.64 Disciplinary violations—possible dispositions.** A violation of HSS 303.12–303.63 may be dealt with in the following ways: . . .

"(3) The violation may be referred to the security supervisor in writing by a conduct report. See HSS 303.66. Violations referred to the security supervisor may be dealt with as follows:

"(a) The security supervisor may dismiss, alter or correct the report. See HSS 303.67.

"(b) If the violation is a minor one, the security supervisor shall refer the matter to a hearing officer to be disposed of in accordance with HSS 303.75.

"(c) If the violation is a major one, the security supervisor shall refer the matter to a hearing officer to be disposed of in accordance with HSS 303.76–303.84."

[7] United States Constitution, amendment XIV, section 1:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities

issue is whether Mr. Hoover, who was accused of a major violation of HSS 303,[8] validly waived his right to the formal hearing to which he was entitled.

Wis. Admin. Code section HSS 303.77 (1980), provides that if an inmate accused of a major offense waives his right to a formal hearing, the disciplinary hearing shall be held in accordance with Wis. Admin. Code section HSS 303.75 (1980).[9] In this case, Mr. Hoover's hearing was conducted according to HSS 303.75 which provides the informal disciplinary hearing procedure for minor offenses under HSS 303.[10] Unless Mr. Hoover executed

of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[8] "HSS 303.68 Major and minor penalties and offenses. . . . (2) Any violation of the following sections is a *major* offense: . . . HSS 303.22 Escape."

[9] "HSS 303.77 Hearing procedure for major violations when due process hearing waived. If an inmate waives his or her right to a due process hearing of the type described in HSS 303.76, a disciplinary hearing shall be held in accordance with HSS 303.75. Such a waiver does not constitute an admission of the alleged violation."

[10] "HSS 303.75 Hearing procedure for minor violations. . . . (2) At the hearing, a hearing officer, appointed under sub. (6), shall review the conduct report and discuss it with the inmate. The inmate shall be provided with an opportunity to respond to the report and make a statement about the alleged violation. The hearing officer may question the inmate. The inmate has no right to a staff advocate, to confront witnesses, or to have witnesses testify on his or her behalf.

"(3) The hearing officer shall decide the guilt or innocence of the inmate on each charge, decide the punishment, and announce these decisions to the inmate. Penalties for minor violations shall be imposed in accordance with HSS 303.72. HSS 303.83 and 303.84 apply for major violations when a due process hearing is waived under HSS 303.76(6).

"(4) A finding of guilty shall be based on the preponderance of the evidence, and the institution must establish this.

a valid waiver of his right to a formal hearing, the use of this informal hearing procedure deprived him of that right.

Neither the circuit court nor the court of appeals addressed the issue of the validity of Mr. Hoover's waiver of his right to a formal hearing. The issue has been raised for the first time on this review.

According to Mr. Hoover's counsel, while the formal hearing procedure meets the minimum constitutional requirements delineated in *Wolff*, the informal hearing procedure used in this case does not. Since the waiver of the formal hearing is a waiver of constitutional rights, the waiver must be knowingly, intelligently and voluntarily made. Mr. Hoover's counsel asserts that the record does not show that Mr. Hoover was ever informed of his rights in the formal hearing procedure or what that procedure entailed. Therefore, counsel argues, there is nothing to show that Mr. Hoover's waiver was knowingly and intelligently made. Counsel claims that the adjustment committee committed an error of law in disposing of Mr. Hoover's case by means of an informal hearing.

HSS 303 and the notes in the appendix thereto make clear that the waiver of the right to a formal hearing is to be an informed decision. The note to HSS 303.77 pro-

"(5) The hearing officer shall write the finding of guilty for each charge, the punishment and the reasons for it on the conduct report and return it to the security office for record entry and compliance with the disposition.

"(6) The superintendent shall appoint one or more staff members to serve as hearing officers. Only persons who are eligible to serve on the adjustment committee may be appointed. A hearing officer with direct personal involvement in the conduct report, shall not hold a hearing on that conduct report.

"(7) An inmate may waive the time limits provided in this section in writing.

"(8) An inmate may appeal the disposition of a minor hearing within 10 days to the superintendent."

vides in part: "To ensure that any waiver is a knowing, intelligent one, the inmate must be informed of his or her right to a due process hearing and what that entails (HSS 303.76(4)); informed of what the hearing will be like if he or she waives due process (HSS 303.76(5)); and the waiver must be in writing (HSS 303.76)." Wis. Admin. Code section HSS 303.76 (1980) provides that the accused inmate should be given the following information:

"**HSS 303.76   Hearing procedure for major offenses— Notice** . . . (4) The inmate shall be informed that he or she has a right to a due process hearing or that he or she may waive this right in writing. The inmate shall be informed that if a due process hearing is chosen, the inmate may present oral, written, documentary, physical evidence, and evidence from voluntary eye witnesses in accordance with these sections; that he or she has a right to the assistance of a staff advocate in accordance with these sections; that the adjustment committee may permit direct questions or require the inmate or his or her advocate to submit questions to the adjustment committee to be asked of the witness; that repetitive, disrespectful, and irrelevant questions may be forbidden; and that the inmate may appeal the finding and disposition of the adjustment committee in accordance with HSS 303.78.

"(5) The inmate shall be informed that he or she may waive the right to a due process hearing and the rights specified in sub. (4). The inmate shall be informed that if the right to a due process hearing is waived, the conduct report shall be disposed of as follows:

"(a) The inmate shall appear before a hearing officer under HSS 303.75 or the adjustment committee as soon as possible but no later than 21 days;

"(b) The inmate may present his or her version of the facts;

"(c) The staff member who made the conduct report need not be present;

"(d) The hearing officer or adjustment committee may question the inmate and otherwise investigate the case and shall decide the guilt or innocence of the inmate and the punishment to be imposed; and

"(e) The inmate may appeal the finding and punishment to the superintendent."

We conclude that Mr. Hoover was informed of his rights under the formal "due process" hearing procedure and the rights he retained should he waive that procedure. We also conclude that Mr. Hoover's waiver was knowingly, intelligently and voluntarily made.

On July 28, 1983, Mr. Hoover signed a waiver of formal hearing form. That form provided:

"I also certify that I have read, or have had read to me, and understand both said Conduct Report and Notice of Major Disciplinary Hearing Rights. I also understand what kind of hearing I will receive if I sign this waiver and that, even if I sign this waiver, I will be able to speak in my own defense."

The form also provided two alternatives. The first waived the formal hearing but did not admit guilt. The second waived the formal hearing and did admit guilt. The box next to the first alternative was checked on the form signed by Mr. Hoover.

That Mr. Hoover signed a written form in which he certified that he had read, or had had someone read to him, and understood the Notice of Major Disciplinary Hearing Rights, provides strong evidence that Mr. Hoover was informed of what was involved in the formal hearing. Further evidence that Mr. Hoover was informed of his right to a formal hearing and what that hearing entailed is provided by the standard formal hearing waiver form which is the subject of the petitioner's, Superintendent John R. Gagnon's, motion to supplement the record.

When the certified return to the writ of certiorari was sent from the correctional institution to the circuit court, a photocopy of the formal hearing waiver form signed by Mr. Hoover was included. The photocopy, however, was

made only of the side of the form signed by Mr. Hoover. The opposite side of the form was not photocopied and was not included in the return. When the circuit court ordered Mr. Hoover's record expunged, the original form signed by Mr. Hoover was destroyed by the correctional institution in compliance with that order. Petitioner Gagnon now moves to supplement the record with a standard formal hearing waiver form so this court may see what was stated on the opposite side of the form signed by Mr. Hoover. We grant the motion to supplement the record. It is apparent that the missing side of the form signed by Mr. Hoover was omitted in the return to the circuit court by clerical error.

The side of the form opposite the side signed by Mr. Hoover contained the Notice of Major Disciplinary Hearing Rights. That notice contains the rights to which an inmate accused of a major offense is entitled as provided by HSS 303.76 quoted above. It discloses the accused's right to staff advocate, to confront witnesses and to present evidence and witnesses on his behalf.

On the side of the form signed by Mr. Hoover, the accused is further informed of what type of procedure would be utilized should the accused waive his right to a formal hearing. In compliance with HSS 303.76, it provides:

"10. YOU ARE FURTHER ADVISED THAT, IF YOU WAIVE YOUR RIGHT TO A DISCIPLINARY HEARING, THE ALLEGED VIOLATION(S) WILL BE DISPOSED OF AS FOLLOWS:
"A. YOU SHALL APPEAR BEFORE A HEARING OFFICER OR THE ADJUSTMENT COMMITTEE AS SOON AS POSSIBLE BUT NO LATER THAN 21 DAYS.
"B. YOU MAY PRESENT YOUR VERSION OF THE FACTS.
"C. THE STAFF MEMBER WHO WROTE THE CONDUCT REPORT DOES NOT NEED TO BE PRESENT.

"D. THE HEARING OFFICER OR ADJUSTMENT COMMITTEE MAY QUESTION YOU AND OTHERWISE INVESTIGATE THE CASE AND SHALL DECIDE YOUR GUILT OR INNOCENCE AND DECIDE THE PUNISHMENT TO BE IMPOSED."

Mr. Hoover certified that he had read, or had had someone read to him, and understood the Notice of Major Disciplinary Hearing Rights. The waiver form signed by Mr. Hoover contained that notice and that notice disclosed the rights of the accused in a formal hearing. The waiver form also disclosed the type of procedure which would be followed should that formal hearing be waived. Therefore, given that the standard to be used to determine if a waiver is valid is that the waiver be knowingly, intelligently and voluntarily made, Mr. Hoover's waiver of the right to a formal hearing was valid.

## (2) *APPLICABILITY OF HSS 303.86(4)*

Given that Mr. Hoover did waive his right to a formal hearing, the issue is whether the provisions of Wis. Admin. Code section HSS 303.86(4) (1981) apply to the informal hearing procedure under HSS 303.75. HSS 303.-86(4) provides:

"HSS 303.86 Evidence . . . (4) If a witness refuses to testify in person and if the committee finds that testifying would pose a significant risk of bodily harm to the witness, the committee may consider a corroborated, signed statement under oath from that witness without revealing the witness's identity. The contents of the statement shall be revealed to the accused, though the statement may be edited to avoid revealing the identity of the witness. The committee may question the witnesses, if they are otherwise available. Two anonymous statements by different persons may be used to corroborate each other. A statement can be corroborated in either of the following ways:
"(a) By other evidence which substantially corroborates the facts alleged in the statement such as, eye-

witness account by a staff member or circumstantial evidence; or

"(b) By evidence of a very similar violation by the same person."

In the instant case, the adjustment committee relied in part upon the information supplied by the inmate informant. The inmate informant refused to testify at Mr. Hoover's hearing and remained a confidential witness.

Mr. Hoover's counsel contends that Mr. Hoover was denied the hearing he was entitled to under HSS 303.75 because the adjustment committee never made a finding that testifying could have posed a significant risk of bodily harm to this confidential witness. We conclude, contrary to the court of appeals and the circuit court, that the provisions of HSS 303.86 (4) do not apply to informal hearings under HSS 303.75 and that the adjustment committee did not err as a matter of law.

HSS 303.75 (2) sets out the procedure to be followed in informal hearings for minor violations or in cases such as this in which the right to a formal hearing has been waived. It provides:

"**HSS 303.75 Hearing procedure for minor violations.** . . . (2) At the hearing, a hearing officer, appointed under sub. (6), shall review the conduct report and discuss it with the inmate. The inmate shall be provided with an opportunity to respond to the report and make a statement about the alleged violation. The hearing officer may question the inmate. The inmate has no right to a staff advocate, to confront witnesses, or to have witnesses testify on his or her behalf."[11]

---

[11] Wis. Admin. Code section HSS 303.82 (1980) provides in part:

"**Adjustment committee.** . . . (3) An adjustment committee may hold a hearing even if the inmate has waived due process, if it is more convenient for the committee to hold the hearing than to schedule a hearing before a hearing officer. In that case the

HSS 303.75(2) provides simply that the hearing officer will review the conduct report, discuss it with the inmate and give the inmate the opportunity to respond to the report and make a statement concerning the alleged violation. It specifically states that the inmate has no right to present or confront witnesses.

Since there is no provision for witnesses at the informal hearing, HSS 303.86(4) does not apply because it only becomes operative when witnesses refuse to testify. HSS 303.86(4), by its terms, contemplates a hearing procedure in which witnesses may be called upon to testify. The informal hearing procedure of HSS 303.75, does not provide for witness testimony.

"In construing the administrative rule, great consideration should be given to the harm which the rule seeks to remedy or prevent and the purpose sought to be accomplished." *State ex rel. Staples v. DHSS,* 115 Wis. 2d at 368–369. The Note to HSS 303.86 provides in pertinent part:

"Sub. (4) permits the identity of the witness to be withheld after a finding by the committee or hearing officer that to reveal it would substantially endanger the witness. This is not often a problem, but it does arise, particularly in cases of sexual assault. To protect the accused, it is required that there be corroboration; that the statement be under oath; that the content of the statement be revealed, consistent with the safety of the inmate. In addition, the committee or hearing officer may question the people who give the statements."

HSS 303.86(4) is designed to protect the accused. In particular, it is designed to protect the accused's right to confront witnesses presented against him and his right to present witnesses on his behalf. This is accomplished by limiting the instances in which the adjustment commit-

committee should follow the procedure for a hearing before a hearing officer."

tee may consider the statement of a witness who refused to testify in person at the accused's hearing. The committee must find that testifying would pose a significant risk of bodily harm to the witness. The committee must also find the following indicia of reliability: the statement was made under oath; the statement was corroborated.

The protection provided by HSS 303.86(4) is not necessary in an informal hearing under HSS 303.75. Since the accused inmate has no right to confront or to present witnesses at his informal hearing, there is no basis for the application of HSS 303.86(4). Therefore, we conclude that HSS 303.86(4) does not apply to informal hearings under HSS 303.75.

There is no constitutional right to confrontation and cross-examination in prison disciplinary cases:

"Confrontation and cross-examination present greater hazards to institutional interests. If confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls. . . . it does not appear that confrontation and cross-examination are generally required in this context [of state prison disciplinary proceedings]. We think that the Constitution should not be read to impose the procedure. . . ." *Wolff v. McDonnell,* 418 U.S. 567–568.

HSS 303.76(5) provides in part:

"**303.76 Hearing procedure for minor violations.** . . . (5) The inmate shall be informed that he or she may waive the right to a due process hearing and the rights specified in sub. (4). The inmate shall be informed that if the right to a due process hearing is waived, the conduct report shall be disposed of as follows: . . .

"(d) The hearing officer or adjustment committee may question the inmate and otherwise investigate the case and shall decide the guilt or innocence of the inmate and punishment to be imposed. . . ."

The authority of the adjustment committee to consider the informant's statement comes within its authority to otherwise investigate the case.

### (3) SUMMARY OF CONFIDENTIAL INFORMANT'S STATEMENTS

Mr. Hoover's counsel also contends that the failure to include the informant inmate's actual statement in the return to writ denied Mr. Hoover a record adequate for review. Counsel places significant reliance upon this court's decision in *State ex rel. Staples v. DHSS.*

*Staples* involved a review of a formal hearing and the application of HSS 303.86(4). *Staples,* 115 Wis. 2d at 367–368. In *Staples,* this court states:

"In this record, there is no finding that the unidentified informant's statement was under oath. If a return to the writ of certiorari had been ordered, the statement would have been brought up to the trial court. It could have been sealed for the judge's inspection to protect the identity of the witness. In that way, the judge could see if the requirement of the administrative rule that the statement be under oath was met."

In *Staples,* the obvious concern of this court was compliance with the provisions of HSS 303.86(4). HSS 303.-86(4), however, is inapplicable to this case because Mr. Hoover waived his right to a formal hearing. Therefore, there was no need to include the actual statement of the informant to determine if the statement was made under oath.

We conclude that the use of the summary of the informant's statement in this informal proceeding did not deprive the accused of an adequate record on review. The conduct report and the summary of the statement were sufficient to show the factual basis for the imposition of the penalty by the adjustment committee.

Finally, Mr. Hoover's counsel asserts that the informal procedures provided for minor violations do not provide adequate due process for a major penalty deprivation. We disagree.

The parties do not dispute that the formal proceeding provided under HSS 303 does comply with minimum constitutional due process requirements. Mr. Hoover was entitled to such a hearing, yet knowingly, intelligently and voluntarily waived that right. He was informed what the informal hearing would entail prior to waiving that right. At the informal hearing, he was given the right to speak in his own defense. The finding of guilty was in writing as were the reasons for the committee's decision. Mr. Hoover also had the right to appeal to the superintendent under Wis. Admin. Code section HSS 303.75(8) (1980). The constitution does not require more.

The adjustment committee acted within its jurisdiction, it did not err as a matter of law, its action was not arbitrary, oppressive or unreasonable, and the evidence reasonably supported its decision and order.

*By the Court.*—The decision of the court of appeals affirming the order of the circuit court is reversed. The decision of the adjustment committee and the discipline imposed against Mr. Hoover are reinstated.

SHIRLEY S. ABRAHAMSON, J. (dissenting). I would affirm the decision of the circuit court and the court of appeals vacating the decision of the adjustment committee. Because the record before this court is incomplete, the decision of the adjustment committee must be vacated.

The adjustment committee based its decision first on the informant's confidential statement, which the committee said was freely given, sworn to, and notarized.

Yet the informant's sworn and notarized confidential statement is not in the record. The record before the circuit court, court of appeals, and this court contains only a summary of the informant's confidential statement. The summary was not prepared by the informant.

Furthermore, there are discrepancies between the summary of the informant's confidential statement and other documents in the record. Significantly, the summary of the statement in no way indicates that the informant ever actually saw Hoover breaking the glass of the bathroom. An officer's conduct report, however, specifically states that "Hoover cut a screen out and was observed smashing a window out in A wing bathroom of housing unit 4."

HSS 303.76 provides in part that "[t]he hearing officer or adjustment committee may question the inmate and otherwise investigate the case and *shall decide the guilt or innocence of the inmate and the punishment to be imposed.*" (Emphasis added.) Thus, although the majority concludes that Hoover waived his right to a formal hearing, it is clear that Hoover did not plead guilty and that under the rules he was entitled to a decision based on facts in the record by which the institution established his guilt. HSS 303.75(4), 303.78(2).

As the majority correctly sets forth, "In reviewing the committee's order on certiorari the reviewing court is limited to determining: (1) Whether the committee kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable; and (4) whether the evidence was such that it might reasonably make the order or determination in question." P. 140 (citing *State ex rel. Staples v. DHSS*, 115 Wis. 2d 363, 369, 370, 340 N.W2.d 194 (1983)).

Given that the informant's confidential statement played a major part in the adjustment committee's decision, that report should have been a part of the record

on appeal. Without it, and in light of the contradictions between the summary of the statement and the other documents in the record, no reviewing court can determine whether the committee acted according to law or acted arbitrarily or whether the evidence was such that the committee might reasonably make the decision in question.

Although the evidence apart from the informant's statement is adequate to support the adjustment committee's decision, I cannot affirm the committee's decision which rests substantially on a document not before the court.