STATE of Wisconsin EX REL. Quintin D. L'MINGGIO, Petitioner-Appellant-Petitioner,

v.

Jane GAMBLE and Gerald Berge, Respondents-Respondents.

Supreme Court

*No. 01–0535. Oral argument December 3, 2002.—Decided July 2, 2003.*

2003 WI 82

(Also reported in 667 N.W.2d 1.)

For the petitioner-appellant-petitioner there were briefs by *Colleen D. Ball, Sarah A. Huck,* and *Reinhart Boerner Van Deuren S.C.,* Milwaukee, and oral argument by *Colleen Ball.*

For the respondents-respondents the cause was argued by *Corey F. Finkelmeyer,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. WILLIAM A. BABLITCH, J. Quintin L'Minggio (L'Minggio) petitioned this court for review of a court of appeals' decision that upheld a circuit court's dismissal of L'Minggio's challenge to a prison disciplinary hearing.[1] The circuit court construed L'Minggio's petition for habeas corpus as a petition for certiorari and dismissed it as untimely under Wis. Stat. § 893.735(2) (1999–2000).[2] The court of appeals affirmed the dismissal of L'Minggio's action, but on the grounds that L'Minggio failed to exhaust his administrative remedies as required by Wis. Stat. § 801.02(7)(b) and Wis. Admin. Code § DOC 310.04 (Apr., 1998).

---

[1] *State ex rel. L'Minggio v.Gamble,* No. 01–0535, unpublished slip op. (Wis. Ct. App. Feb. 21, 2002).

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 2. We conclude that L'Minggio's petition was properly construed as an action for certiorari rather than habeas corpus since a writ of certiorari provides L'Minggio with an adequate remedy in the law and has historically been used to challenge prison disciplinary decisions. We also conclude that L'Minggio exhausted his administrative remedies by satisfying the requirements under Wis. Admin. Code § DOC 310.04. Since the Department of Corrections (Department) failed to provide notice to L'Minggio of any further appeal rights when his inmate complaint was rejected, we conclude that the Department is estopped from claiming that L'Minggio failed to exhaust his administrative remedies in this case. Accordingly, we reverse the decision of the court of appeals and remand the matter to the circuit court for Dane County for proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

¶ 3. On February 15, 2000, prison officials at the Kettle Moraine Correctional Institution issued L'Minggio a conduct report for allegedly participating in gang activity and planning to assault prison staff. On February 24, 2000, a prison adjustment committee found L'Minggio guilty of violating administrative rules against group resistance and conspiracy to commit battery. The adjustment committee stated that it relied upon the following factors in reaching its decision: (1) the person who prepared the report had been a reliable investigator in the past; (2) there were five notarized witness statements regarding L'Minggio's involvement in the alleged incident; and (3) L'Minggio's witnesses had no knowledge of the incident. The adjustment committee imposed eight days of adjustment segregation and three years of program segregation.

60

¶ 4. L'Minggio appealed the adjustment committee's decision to the program review committee, arguing that he was denied his due process rights to a fair and impartial hearing; that he did not have an impartial adjudicator; and that he was denied the opportunity to present and question witnesses on his behalf. The program review committee rejected L'Minggio's arguments and found him guilty of the charges, which resulted in transferring L'Minggio to the Wisconsin Secure Program Facility in Grant County for three years.

¶ 5. L'Minggio appealed the disciplinary determination to the warden, who affirmed the decision on March 6, 2000. After attempting to appeal the warden's decision to the Secretary of the Department of Corrections, L'Minggio filed an inmate complaint regarding the disciplinary proceeding on June 12, 2000. The next day, the Inmate Complaint Examiner (ICE) rejected L'Minggio's complaint as untimely because it was not filed within 14 days of the incident, as required under Wis. Admin. Code § DOC 310.09(3).[3] L'Minggio claims that he received the ICE's rejection on June 21, 2000.

¶ 6. L'Minggio next attempted to seek judicial review by petitioning for a writ of habeas corpus in the Dane County Circuit Court. L'Minggio's petition was returned to him along with a letter dated August 3, 2000, explaining that certain documents were missing from his submission and that habeas corpus actions should be venued in the county of confinement.

¶ 7. On August 31, 2000, L'Minggio mailed another document labeled as a petition for a writ of

---

[3] Wisconsin Admin. Code § DOC 310.09(3) provides: "An inmate shall file a complaint within 14 calendar days after the occurrence giving rise to the complaint, except that the institution examiner may accept a late complaint for good cause."

habeas corpus to the circuit court in Grant County, the county where L'Minggio was incarcerated. Upon review, the Grant County Circuit Court, George S. Curry, Judge, construed L'Minggio's action as a petition for certiorari, rather than habeas corpus, and transferred the case to Dane County in accordance with the venue provision of Wis. Stat. § 801.50(3).[4] The Dane County Circuit Court, Gerald C. Nichol, Judge, agreed that the action was properly construed as a petition for certiorari, but dismissed it as untimely under Wis. Stat. § 893.735(2).[5] The Dane County Circuit Court determined that L'Minggio's cause of action accrued on March 23, 2000, which was the date L'Minggio received the warden's response to his administrative appeal; therefore, L'Minggio did not file his petition within the 45–day deadline required under § 893.735(2).

---

[4] Wisconsin Stat. § 801.50(3) provides: "All actions in which the sole defendant is the state, any state board or commission or any state officer, employee or agent in an official capacity shall be venued in Dane County unless another venue is specifically authorized by law."

[5] Wisconsin Stat. § 893.735(2) provides:

> An action seeking a remedy available by certiorari made on behalf of a prisoner is barred unless commenced within 45 days after the cause of action accrues. The 45–day period shall begin on the date of the decision or disposition, except that the court may extend the period by as many days as the prisoner proves have elapsed between the decision or disposition and the prisoner's actual notice of the decision or disposition. Subject to no contact requirements of a court or the department of corrections, a prisoner in administrative confinement, program segregation or adjustment segregation may communicate by 1st class mail, in accordance with department of corrections' rules or with written policies of the custodian of the prisoner, with a 3rd party outside the institution regarding the action or special proceeding.

¶ 8. In an unpublished per curiam decision, the court of appeals affirmed the Dane County Circuit Court's dismissal of L'Minggio's action, but on different grounds. The court of appeals disagreed with the Dane County Circuit Court that the 45–day time limit for L'Minggio's certiorari action started to run with the warden's decision; however, the court of appeals concluded that L'Minggio was barred from seeking judicial review because he failed to exhaust his administrative remedies.

¶ 9. In reviewing the dismissal of L'Minggio's challenge to his prison disciplinary hearing, we address the following issues: (1) whether L'Minggio exhausted his administrative remedies as required under Wis. Admin. Code § DOC 310.04 and (2) whether L'Minggio's petition was properly construed as an action for certiorari rather than habeas corpus.

## II. STANDARD OF REVIEW

■

¶ 10. To determine whether L'Minggio's petition was properly construed as an action for certiorari instead of an action for habeas corpus poses a question of law that this court reviews de novo. *State ex rel. Woods v. Morgan,* 224 Wis. 2d 534, 537, 591 N.W.2d 922 (Ct. App. 1999).

■

¶ 11. The examination of whether L'Minggio exhausted his administrative remedies involves the interpretation and application of chapter 310 of the Wisconsin Administrative Code. The interpretation of an administrative regulation is a question of law that this court reviews de novo. *In re Marriage of Brown v. Brown,* 177 Wis. 2d 512, 516, 503 N.W.2d 280 (Ct. App. 1993).

## III. ANALYSIS

A. Exhaustion of Remedies

¶ 12. We first address whether L'Minggio exhausted his administrative remedies under chapter 310 of the Wisconsin Administrative Code. The exhaustion of administrative remedies is required pursuant to Wisconsin's Prisoner Litigation Reform Act, Wis. Stat. § 801.02(7)(b), and Wis. Admin. Code. § DOC 310.04.[6] Under § DOC 310.04, if an inmate wishes to challenge the procedures used by an adjustment committee or a hearing officer in a prison disciplinary action, he or she

---

[6] Wisconsin Stat. § 801.02(7)(b) provides:

No prisoner may commence a civil action or special proceeding, including a petition for a common law writ of certiorari, with respect to the prison or jail conditions in the facility in which he or she is or has been incarcerated, imprisoned or detained until the person has exhausted all available administrative remedies that the department of corrections has promulgated by rule or, in the case of prisoners not in the custody of the department of corrections, that the sheriff, superintendent or other keeper of a jail or house of correction has reduced to writing and provided reasonable notice of to the prisoners.

Wisconsin Admin. Code § DOC 310.04 provides:

Before an inmate may commence a civil action or special proceedings against any officer, employe or agent of the department in the officer's, employe's or agent's official or individual capacity for acts or omissions committed while carrying out that person's duties as an officer, employe or agent or while acting within the scope of the person's office, the inmate shall file a complaint under s. DOC 310.09 or 310.10, receive a decision on the complaint under s. DOC 310.12, have an adverse decision reviewed under s. DOC 310.13, and be advised of the secretary's decision under s. DOC 310.14. With respect to procedures used by the adjustment committee or hearing officer in a prison disciplinary action under ch. DOC 303, an inmate shall appeal to the warden under s. DOC 303.76 and file an inmate complaint under s. DOC 310.08(3) in order to exhaust administrative remedies.

must appeal to the warden under § DOC 303.76 and file an inmate complaint under § DOC 310.08(3), in order to exhaust his or her administrative remedies. L'Minggio fulfilled the first requirement by appealing the adjustment committee's decision to the warden in accordance with § DOC 303.76. L'Minggio also satisfied the second requirement by filing an inmate complaint pursuant to § DOC 310.08(3); however, the ICE rejected his complaint as untimely.

¶ 13. The ICE rejection letter received by L'Minggio declared his complaint "rejected" because the complaint was not filed within 14 calendar days of the incident as required under Wis. Admin. Code § DOC 310.09(3). However, the rejection letter provided no information as to whether L'Minggio could appeal the ICE's rejection of his complaint or if there was a further step that L'Minggio would have to take in order to exhaust his administrative remedies.

¶ 14. In contrast, prior ICE decision letters received by L'Minggio regarding other complaints, which had been dismissed on the merits, explicitly provided notice that "[i]f you are adversely affected by the decision, you have 10 calendar days to appeal the decision to the Corrections Complaint Examiner. Form (DOC-405) for such an appeal may be obtained from the Institution Complaint Examiner." No such notice was provided in the ICE decision letter in this case, which rejected L'Minggio's complaint for untimeliness.

¶ 15. The Department's failure to advise L'Minggio that he could appeal the ICE's rejection of his complaint estops the Department from claiming that L'Minggio failed to exhaust his administrative remedies. Although L'Minggio's complaint was rejected by the ICE as untimely, L'Minggio was neither aware of

nor informed that there were any further steps in the administrative process. Therefore, we hold that L'Minggio exhausted his administrative remedies by following the express directives under Wis. Admin. Code § DOC 310.04 by (1) appealing the adjustment committee's decision to the warden and (2) filing an inmate complaint.

B. Petition for Certiorari versus Habeas Corpus

¶ 16. We next address whether L'Minggio's petition was properly construed as an action for certiorari rather than for a writ of habeas corpus. At the outset, we note that it is well-settled that pro se complaints are to be liberally construed to determine if the complaint states any facts that can give rise to a cause of action. *bin-Rilla v. Israel,* 113 Wis. 2d 514, 520, 335 N.W.2d 384 (1983). Therefore, a court should not deny a prisoner's pleading based on its label rather than its allegations. *Id.* at 521.

¶ 17. The writ of habeas corpus arises out of the common law and is guaranteed by both the Wisconsin and federal constitutions as well as state and federal statutes.[7] Although habeas corpus typically arises out of a criminal proceeding, it is a separate civil action that is founded on principles of equity. *State ex rel. Fuentes v. Court of Appeals,* 225 Wis. 2d 446, 450, 593 N.W.2d 48 (1999) (citing *State ex rel. Korne v. Wolke,* 79 Wis. 2d 22, 26, 255 N.W.2d 446 (1977); *State ex rel. Durner v. Huegin,* 110 Wis. 189, 220, 85 N.W. 1046 (1901)).

_____

[7] *See* Wis. Const. Art. I, § 8, cl. 4; U.S. Const. Art. I, § 9, cl. 2; Wis. Stat. § 782.01; 28 U.S.C. § 2241.

**[9, 10]**

¶ 18. Habeas corpus is an extraordinary writ that is only available to a petitioner under limited circumstances. *State ex rel. Haas v. McReynolds,* 2002 WI 43, ¶ 12, 252 Wis. 2d 133, 643 N.W.2d 771. A petitioner who seeks habeas corpus relief is required to meet certain criteria. First, a petitioner must be restrained of his or her liberty. *Fuentes,* 225 Wis. 2d at 451. Second, a petitioner must show that the restraint was imposed by a tribunal without jurisdiction or that the restraint was imposed contrary to constitutional protections. *Id.* Third, a petitioner must demonstrate that there was no other adequate remedy available in the law. *Id.*

¶ 19. This court has not addressed whether habeas corpus may ever constitute the proper remedy for a claim that a prisoner's constitutional rights have been abridged by conditions of confinement. *bin-Rilla,* 113 Wis. 2d at 524. "Conditions of confinement" have been described as claimed denials of rights after a sentence is imposed when an individual is in custody. *Id.* at 518. In *bin-Rilla,* we concluded that the appropriate remedy for a prisoner's claim of illegal conditions of confinement was not release from custody, but rather a judicially mandated change in the illegal conditions or an injunction against the practices and possibly a damages award. *Id.* at 522.[8]

¶ 20. In contrast to a petition for habeas relief, a court that is petitioned for a writ of certiorari regarding

---

[8] In *bin-Rilla,* we noted that there are several remedies that a prisoner may pursue other than habeas corpus to challenge conditions of confinement, such as mandamus, prohibition, certiorari, and a civil rights action under 42 U.S.C. § 1983. *bin-Rilla v. Israel,* 113 Wis. 2d 514, 518 n.4, 335 N.W.2d 384 (1983).

a decision by a prison adjustment committee determines: (1) whether the committee kept within its jurisdiction; (2) whether the committee acted according to law; (3) whether the committee's action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the determination in question. *State ex rel. Hoover v. Gagnon,* 124 Wis. 2d 135, 140, 368 N.W.2d 657 (1985). A certiorari court is limited to reviewing the record and cannot consider additional facts outside of the record. *State ex rel. Richards v. Leik,* 175 Wis. 2d 446, 455, 499 N.W.2d 276 (Ct. App. 1993) (citing *State ex rel. Lomax v. Leik,* 154 Wis. 2d 735, 739–40, 454 N.W.2d 18 (Ct. App. 1990); *State ex rel. Hippler v. City of Baraboo,* 47 Wis. 2d 603, 614–15, 178 N.W.2d 1 (1970)).

¶ 21. Even though this court has not determined whether alleged illegal conditions of confinement may ever be challenged via habeas corpus, "[c]ertiorari is the well-established mode of judicial review for inmates . . . who seek to challenge prison disciplinary decisions." *State ex rel. Curtis v. Litscher,* 2002 WI App 172, ¶ 12, 256 Wis. 2d 787, 650 N.W.2d 43. The challenge of prison disciplinary decisions via a writ of certiorari is supported by a body of Wisconsin case law. *See, e.g., State ex rel. Staples v. DHSS,* 115 Wis. 2d 363, 340 N.W.2d 194 (1983); *Casteel v. Kolb,* 176 Wis. 2d 440, 500 N.W.2d 400 (Ct. App. 1993); *Richards,* 175 Wis. 2d at 449–50; *State ex rel. Irby v. Israel,* 95 Wis. 2d 697, 702–03, 291 N.W.2d 643 (Ct. App. 1980); *State ex rel. Meeks v. Gagnon,* 95 Wis. 2d 115, 119, 289 N.W.2d 357 (Ct. App. 1980).

¶ 22. As a challenge to a prison disciplinary action, L'Minggio's claims can be adequately addressed by a certiorari action. In appealing the adjustment committee's decision, L'Minggio argued that he was

denied his due process rights to a fair and impartial hearing; that he did not have an impartial adjudicator; and that he was denied the opportunity to present and question witnesses on his behalf. A certiorari court could review the record with respect to L'Minggio's claims to determine whether the adjustment committee acted according to law, whether its actions were arbitrary, oppressive or unreasonable, and whether the evidence was such that it might have reasonably made the determination in question.

¶ 23. Judicial review of whether a prison adjustment committee acted according to law includes reviewing whether the committee followed its own rules governing the conduct of its hearings. *Meeks,* 95 Wis. 2d at 119. If there is evidence that is contrary to a committee's decision that indisputably establishes a fact, then the committee's decision constitutes a violation of law that may be reached by certiorari. *State ex rel. Heller v. Lawler,* 103 Wis. 460, 465, 79 N.W. 777 (1899). For example, the court of appeals has held on certiorari review that a hearing examiner, who had witnessed a riot and hostage situation, and then participated in the resulting prison disciplinary proceeding, should have been disqualified from the proceeding under one of the Department's own administrative rules, Wis. Admin. Code § DOC 303.82(2).[9] *Curtis,* 256 Wis. 2d 787, ¶ 20.

---

[9] Wisconsin Admin. Code § DOC 303.82(2) provides:

No person who has substantial involvement in an incident, which is the subject of a hearing, may serve on the committee for that hearing. Committee members shall determine the subject matter of the hearing in advance in order to allow replacement of committee members if necessary and thereby avoid the necessity of postponing the hearing.

¶ 24. Nevertheless, L'Minggio asserts that certiorari is not an adequate remedy in this case because he received affidavits from witnesses who recanted their accusations, which were not before the adjustment committee when it made its decision, and are therefore not part of the record. While L'Minggio is correct that facts outside the record are not considered in a certiorari review, these affidavits can be taken into account, albeit indirectly, under Wis. Admin. Code § DOC 310.09(3). Section DOC 310.09(3) provides that "the institution complaint examiner [ICE] may accept a late complaint for *good cause*." § DOC 310.09(3) (emphasis added). It is arguable that these affidavits, which were not before the adjustment committee, could constitute "good cause" for allowing a late complaint. Therefore, a certiorari court could consider whether the ICE acted according to law and whether its actions were unreasonable, arbitrary or oppressive when it rejected L'Minggio's complaint for untimeliness, despite the fact that L'Minggio received affidavits from witnesses, who had withdrawn their accusations after the adjustment committee had already made its decision. If a certiorari court finds that an adjustment committee did not act according to law or acted unreasonably, arbitrary or oppressive, then it may vacate the committee's decision and remit the punishment imposed. *See, e.g., Irby v. Macht,* 184 Wis. 2d 831, 847–48, 522 N.W.2d 9 (1994); *Santiago v. Ware,* 205 Wis. 2d 295, 337–38, 556 N.W.2d 356 (Ct. App. 1996).

¶ 25. Accordingly, since L'Minggio has an adequate remedy via a writ of certiorari and since prison disciplinary actions have been customarily addressed as certiorari actions, we hold that L'Minggio's petition for

70

a writ of habeas corpus was properly construed as a petition for certiorari. Furthermore, similar to our determination in *bin-Rilla,* we conclude that a circuit court is a more appropriate forum than an appellate court to make the kind of factual inquiry that may be necessary to review L'Minggio's claims. *bin-Rilla,* 113 Wis. 2d at 523. Therefore, we conclude that L'Minggio's petition for certiorari should be transferred to the circuit court for Dane County for appropriate proceedings.

¶ 26. Finally, we briefly address whether L'Minggio's petition for certiorari was filed within the 45–day deadline as required by Wis. Stat. § 893.735(2). Under § 893.735(2), the 45–day time period begins on the date of the decision or disposition, but may be extended to the date an inmate receives actual notice of the decision or disposition. The Dane County Circuit Court determined that L'Minggio's cause of action accrued on March 23, 2000—the date L'Minggio received the warden's response to his administrative appeal. The Dane County Circuit Court concluded that L'Minggio did not file his petition within the 45–day deadline because he did not mail his petition until almost five months later, in August of 2000. However, the court of appeals disagreed with the circuit court's analysis and ruled that the 45–day time limit for filing a certiorari action is tolled while an inmate pursues a complaint through the Inmate Complaint Review System, citing *State ex rel. Frasch v. Cooke,* 224 Wis. 2d 791, 592 N.W.2d 304 (Ct. App. 1999). In *Frasch,* the court of appeals stated that "certiorari review could not be granted on any issue . . . until after [an] ICRS review of the procedural issues." *Id.* at 796. *See also State ex rel. Purifoy v. Malone,* 2002 WI App 151, ¶¶ 9–12, 256 Wis. 2d 98, 648 N.W.2d 1 (45–day deadline under

§ 893.735(2) was tolled while inmate pursued and exhausted administrative remedies).

¶ 27. In this case, L'Minggio claims that he received the ICE's rejection letter of his complaint on June 21, 2000; hence, the 45–day time limit began to run as of June 21, 2000. Therefore, in order for L'Minggio's petition to be timely, it must have been filed before August 5, 2000. L'Minggio asserts that he placed the materials for his petition in the prison mailbox system on August 1, 2000, which were received by the Dane County Circuit Court around August 3, 2000. Accordingly, since L'Minggio's petition was filed before August 5, 2000, his petition was timely.

¶ 28. Even if the 45–day time period did not begin to toll until June 21, 2000, the Dane County Circuit Court also noted that L'Minggio's petition was incomplete. This court has stated that a "tolling rule will not excuse a pro se prisoner who ultimately fails to pay filing fees, address the petition properly, or otherwise comply with filing requirements." *State ex rel. Nichols v. Litscher,* 2001 WI 119, ¶ 27, 247 Wis. 2d 1013, 635 N.W.2d 292. L'Minggio claims that his incomplete petition was not his fault, but rather was due to the "vagaries of the mail." L'Minggio explains that he placed his certiorari petition materials in two envelopes that were taped together, and which unfortunately became separated in the mailing process.

¶ 29. If L'Minggio can present proof by affidavit or another evidentiary submission that he placed both envelopes (i.e. a complete petition) in the prison mailbox system before August 5, 2000, and otherwise complied with the filing requirements, then his filing might be acceptable in light of the tolling rule for pro se

prisoners. *State ex rel. Shimkus v. Sondalle,* 2000 WI App 262, ¶ 14, 240 Wis. 2d 310, 622 N.W.2d 763. With respect to certiorari petitions, the tolling rule provides that "when a prison inmate places a certiorari petition in the institution's mailbox for forwarding to the circuit court, the forty-five day time limit in Wis. Stat. § 893.735(2) is tolled." *State ex rel. Shimkus v. Sondalle,* 2000 WI App 238, ¶ 14, 239 Wis. 2d 327, 620 N.W.2d 409; *see also Nichols,* 247 Wis. 2d 1013, ¶ 24. We conclude that if L'Minggio can provide evidence that he complied with the filing requirements for a petition for certiorari by depositing the proper materials for his petition in the prison mailbox system prior to August 5, 2000, then his petition for certiorari may be deemed timely filed under § 893.735(2).

¶ 30. In sum, we conclude that L'Minggio exhausted his administrative remedies by fulfilling the two requirements under Wis. Admin. Code § DOC 310.04 of appealing to the warden and filing an inmate complaint. Because L'Minggio was never informed or notified that he could appeal the ICE's rejection of his inmate complaint, L'Minggio effectively exhausted his administrative remedies as required under Wis. Stat. § 801.02(7)(b) and § DOC 310.04. Furthermore, we hold that L'Minggio's petition was properly construed as an action for certiorari instead of habeas corpus since a writ of certiorari provides L'Minggio an adequate remedy in the law and has historically been used to challenge prison disciplinary decisions. Accordingly, we remand the cause to the circuit court for Dane County for appropriate proceedings.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for Dane County for further proceedings consistent with this opinion.

¶ 31. SHIRLEY S. ABRAHAMSON, CHIEF JUS-TICE *(concurring)*. The majority declines the opportunity presented by this case to decide whether a writ of habeas corpus may ever constitute the proper remedy for a claim that a prisoner's constitutional rights have been abridged by conditions of confinement. The majority concludes that the petitioner's claims can be adequately addressed by a certiorari action and therefore it need not reach the issue of habeas corpus.

¶ 32. I write separately because I am concerned that the adequacy of relief under a writ of certiorari is an illusion in this case.

¶ 33. The petitioner's claim is premised on the fact that he has affidavits from witnesses who withdrew their accusations against him after the adjustment committee made its decision. A court will thus be able to determine whether the defendant's constitutional rights were violated only if it considers the affidavits of these witnesses. As the majority admits, however, a certiorari court can consider these affidavits only "indirectly," if it finds that the ICE did not act according to law or that its actions were unreasonable when it rejected the petitioner's complaint for untimeliness in the face of these affidavits.[1]

¶ 34. In addition, the petitioner's certiorari action need be heard only if it was timely filed. There is a factual dispute in the present case regarding whether the petitioner mailed his completed petition for "certiorari" before August 5, 2001. The majority puts the burden on the petitioner to provide evidence that he put his petition in the prison mailbox system prior to

[1] Majority op., ¶ 24.

August 5, 2000, indicating that an affidavit or other evidentiary submission "might be acceptable."[2]

¶ 35. These two hurdles are not insignificant for the petitioner and raise questions about the adequacy of certiorari as an avenue for relief in this case.

¶ 36. For the foregoing reasons, I write separately.

¶ 37. JON · P. WILCOX, J. *(concurring in part, dissenting in part).* I agree with the court's conclusion that *if* L'Minggio exhausted his remedies, the appropriate judicial mechanism for dealing with his claims is a writ of certiorari. However, I disagree with the court's determination that L'Minggio exhausted the available administrative remedies. The court's decision suggests that because there was no notice of appeal rights on the actual rejection letter L'Minggio received, he should be excused from any additional steps in the required process. I must disagree. Chapter 310 of the Wisconsin Administrative Code clearly describes the procedures inmates are required to complete before heading into court. L'Minggio failed to complete this process. For that reason, I respectfully dissent from the judgment of this court.

¶ 38. As the majority finds, L'Minggio was required to exhaust his administrative remedies under Wisconsin's Prisoner Litigation Reform Act, Wis. Stat. § 801.02(7)(b), and Wis. Admin. Code § DOC 310.04. Majority opinion, ¶ 12. At least some of L'Minggio's complaints challenged procedures used by an adjustment committee or a hearing officer in a prison disciplinary action. Accordingly, under § DOC 310.04, L'Minggio was required to file both an appeal with the warden under § DOC 303.76 and an inmate complaint

---

[2] Majority op., ¶ 29.

under § DOC 310.08(3).[1] *See* majority opinion, ¶ 12. The majority finds that L'Minggio satisfied both of these requirements. *Id.* While we agree with the finding that L'Minggio satisfied the first requirement, based on the language of the DOC provisions, we cannot agree that he satisfied the second.

¶ 39. The court holds that L'Minggio satisfied the second requirement for exhausting his remedies by filing a complaint with the Inmate Complaint Examiner (ICE) under § DOC 310.08(3), a complaint that was rejected as untimely. Majority op., ¶ 12. Section DOC 310.08(3) provides:

> After exhausting the appeal in s. DOC 302.19, 303.75 or 303.76, an inmate may use the ICRS [Inmate Complaint Review System] to challenge the procedure used by the adjustment committee or hearing officer, by a program review committee, or by any decisionmaker acting on a request for authorized leave.

Because § DOC 310.04 requires the inmate to file a complaint under § DOC 310.08, the "may" in § DOC 310.08 does not mean that the procedure is optional; the inmate must follow the direction set forth in § 310.08—the inmate must use the ICRS. Section DOC 310.08(3) itself does not describe the required procedures; rather, the section directs the inmate to use the ICRS process.

---

[1] Wisconsin Admin. Code § 310.04 provides, in relevant part:

> With respect to procedures used by the adjustment committee or hearing officer in a prison disciplinary action under ch. DOC 303, an inmate shall appeal to the warden under s. DOC 303.76 and file an inmate complaint under s. DOC 310.08(3) in order to exhaust administrative remedies.

¶ 40. The ICRS process is laid out in other sections of chapter 310. For example, § DOC 310.06 is titled "Organization of inmate complaint review system," and explains the overall process. Section DOC 310.06 provides that in order to use the complaint system, the inmate is to file a complaint with the ICE under § DOC 310.09 (for individuals) or § DOC 310.10 (for group complaints). L'Minggio filed as an individual, so he was required to follow the procedures in § DOC 310.09. Section DOC 310.09 states clearly that complaints are to be filed within 14 calendar days of an occurrence, but late complaints may be accepted for "good cause." Section DOC 310.11, entitled "Processing complaints at the institution level" states the procedures to be used by the ICE once a complaint is filed. Under § DOC 310.11(11), the ICE is to send a report and recommendation to the appropriate reviewing authority. There are no distinctions made in the section regarding the process to be done. Whatever the recommendation by the ICE, a report and recommendation are to be passed along to the appropriate reviewing authority. Section DOC 310.12 sets out the procedure if this is not done. Under § DOC 310.12(3), "[i]f the complainant does not receive the decision within 23 working days of the ICE's receipt of the complaint, the parties shall consider the complaint dismissed *and the complainant may appeal immediately.*" (Emphasis added.)

¶ 41. Section DOC 310.13(1) provides the next step: "A complainant dissatisfied with a decision may, within 10 calendar days after the date of the decision, appeal that decision by filing a written request for review with the corrections complaint examiner on forms supplied for that purpose." Section DOC 310.14(1) provides the final step in the process: "The

corrections complaint examiner (CCE) shall send the written recommendation, along with a copy of the institution complaint file, to the secretary who shall make a decision based on the record within 10 working days following receipt of the recommendation."

¶ 42. This multi-step process is confirmed in § DOC 310.06. As noted, § DOC 310.06(1) directs the inmate to file a complaint. Next, § DOC 310.06(2) describes the ICE's options in dealing with a complaint. Third, § DOC 310.06(3) states that the appropriate reviewing authority will make a decision under § DOC 310.12. Section DOC 310.06(4) then explicitly provides that an inmate may appeal an adverse decision under § DOC 310.13. Finally, under § DOC 310.06(5) and (6), the CCE is to investigate and make a recommendation to the secretary, who shall then review the CCE's report and make a decision.

¶ 43. None of these procedures suggest that there is an exception for complaints "rejected" as untimely. The majority holds in this case that L'Minggio is not required to do anything beyond filing a complaint with the ICE because he was "neither aware of nor informed that there were any further steps in the administrative process." Majority op., ¶ 15. Implicitly, the majority opinion also seems to suggest that a "rejection" for untimeliness is different. It is true that the rejection in this case was different from other ICE decisions L'Minggio himself had received. Other letters from the ICE to L'Minggio contained an explicit notification of appeal rights. The rejection in this case had no such notification. Nevertheless, the process laid out in the Department's administrative code is clear. These provisions are sufficient notice to an inmate of his or her right to appeal.

¶ 44. This court has found that documents from pro se prisoners are to be liberally construed. *See bin-Rilla v. Israel,* 113 Wis. 2d 514, 520–21, 335 N.W.2d 384 (1983). However, inmates are required to follow the procedures set out by the Department to exhaust their remedies before attempting to get a remedy in court.

¶ 45. To assure that inmates can follow the procedures, the Department has set guidelines for itself to make the process accessible. Under § DOC 310.05, "[t]he department shall make the written complaint procedure readily available to all inmates." In fact, the Department makes sure every inmate is provided an explanation of the procedures: "The department shall provide each inmate written notification and an oral explanation of the complaint procedures upon arrival at an institution, including instructions on how to file a complaint at the institution." Wis. Admin. Code § DOC 310.05. The record in this case shows that L'Minggio was well aware of the process. L'Minggio's own statements declare that he is a so-called "jailhouse lawyer." Further, in his supplemental appendix to this court, L'Minggio provided, among other documents, a copy of instructions on the complaint process.

¶ 46. Since L'Minggio added these instructions to the record in this case, we assume that L'Minggio had them at his disposal. These instructions state: "The following rules govern the processing of complaints. The Institution Complaint Examiner (ICE) may reject any complaint that does not comply." Number 9 on the list of instructions goes on to explain the procedures:

> Your complaint will be acted upon by the ICE who will make a recommendation to the appropriate reviewing authority. *If you do not receive the reviewing authority's decision within 23 working days of the date your complaint was acknowledged, you are to consider your*

> *complaint denied. If your complaint was denied or if you were not satisfied with the reviewing authority's decision, you may send your appeal to the Corrections Complaint Examiner within 10 calendar days after the receipt of the reviewing authority's decision.* Forms may be obtained on the housing unit or from the office of the ICE. The CCE will make a recommendation on your complaint to the Secretary of the Department of Corrections. The Secretary will review the material submitted and render a decision.

(Emphasis added.) These instructions unambiguously provide that the inmate has the right to appeal. While a pro se prisoner may be afforded some leeway in his court filings, an inmate is required to exhaust his or her remedies. The Department of Corrections provides the inmates with the procedures to follow. The onus is, and should be, upon the inmate to be aware of the procedures and follow through with the requirements. L'Minggio did not do so in this case.

¶ 47. I also cannot accept the argument that a "rejection" for untimeliness is different than other types of denial. The pertinent definition listed in the *American Heritage Dictionary* for the verb "reject" is, "To refuse to consider or grant; deny." *American Heritage Dictionary* 1522 (3d ed. 1992). The Department provisions clearly allow for an inmate to appeal an adverse decision. Whether you call the complaint rejected, denied, or dismissed, common sense suggests that a "rejected" complaint is a decision by the ICE and is certainly adverse to the inmate. The instructions L'Minggio provided to this court make this point even more profound. Under these instructions, an inmate may appeal if the complaint was "denied" or if the inmate was "not satisfied" with the reviewing authority's decision. This instruction also provides, as

does chapter 310, that if the inmate does not receive a decision from the reviewing authority, he or she should assume the complaint is denied, triggering the right to appeal.

¶ 48. Although L'Minggio was not provided explicit notice of his right to appeal on the rejection from the ICE, inmates are informed of the proper procedures to follow in filing a complaint. This court has found that the Prisoner Litigation Reform Act (PLRA) requires prisoners with certain types of claims must exhaust their administrative remedies before taking their claims to court. *See Hensley v. Endicott,* 2001 WI 105, ¶ 9, 245 Wis. 2d 607, 629 N.W.2d 686; *Cramer v. Court of Appeals,* 2000 WI 86, ¶ 20, 236 Wis. 2d 473, 613 N.W.2d 591. This court's decision in *Cramer* discussed the purposes of the PLRA, noting: "The history of the [PLRA] legislation also reveals that the PLRA was not designed exclusively to restrict frivolous lawsuits but rather to limit broadly prisoner litigation at taxpayers' expense." *Cramer,* 236 Wis. 2d 473, ¶ 40. While I agree that courts are to liberally construe filings from pro se prisoners, the prisoner has the responsibility to fulfill the requirements of the PLRA. Wisconsin's PLRA was intended to reduce the amount of prisoner litigation flooding the court system. The inmates are informed of the process and should be required to complete the process before attempting to seek relief from the state courts. L'Minggio did not complete the administrative process and, as a result, should be denied relief.

¶ 49. For the foregoing reasons, I respectfully dissent.

¶ 50. I am authorized to state that Justices N. PATRICK CROOKS and DIANE S. SYKES join this opinion.