STATE of Wisconsin EX REL. Aaron Ben WOODS, Petitioner-Appellant,

v.

Kenneth MORGAN, Respondent-Respondent.†

Court of Appeals

*No. 98–0095. Submitted on briefs November 6, 1998.—Decided January 27, 1999.*

(Also reported in 591 N.W.2d 922.)

†Petition to review denied.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Terry W. Rose* of *Rose & Rose* of Kenosha.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Pamela Magee*, assistant attorney general.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

SNYDER, P.J. Aaron Ben Woods appeals from an order denying his petition for a writ of habeas corpus.[1] Woods is incarcerated at the Racine Correctional Institution (RCI) on a parole revocation but argues that he was still a prison inmate when the State revoked his parole. Woods contends that he could not simultaneously hold the dual status of prisoner and

---

[1] Woods filed his petition on December 2, 1997. A hearing was held on December 22, 1997, and the writ was denied on that date.

parolee. Because we conclude that Woods was an inmate of a correctional facility rather than a parolee at the time of the underlying rule violation, we reverse the order and remand with directions that the petition for release on parole be granted.

The facts are undisputed. Woods was convicted of felony crimes and sentenced to thirty years in prison on December 16, 1983.[2] The State concedes that Woods reached his mandatory release date (MRD) and was placed at the Marshall E. Sherrer Correctional Center (Sherrer) on September 9, 1997.[3] The State further concedes that Sherrer is a "minimum security correctional facility." On September 13, 1997, Woods made sexual overtures to a Sherrer inmate and was placed on a parole hold. The department of corrections determined that the Sherrer incident was a parole violation,[4] revoked Woods' parole and recommitted him to RCI.

■

Woods filed a petition for a writ of habeas corpus in the circuit court contending that his detention as a parole violator was an unlawful restraint of his personal liberty interest. An inmate who believes that he or she is illegally restrained of his or her personal liberty may apply for a writ of habeas corpus. *See* § 782.01(1), STATS. "The habeas court determines only

---

[2] Woods was sentenced to twenty-five years for attempted murder, using a dangerous weapon, and five years for attempted second-degree sexual assault.

[3] The State also concedes that "[t]he record is silent as to why that facility was chosen as an interim placement."

[4] Woods does not dispute the circuit court's findings that he signed rules of parole on September 9, 1997, or that his behavior at Sherrer would violate its probation and parole Rules 1 and 36, and WIS. ADM. CODE § DOC 303.15(1)(c).

whether the order resulting in the restraint of liberty was made in violation of the constitution, or whether the court which issued the order lacked the jurisdiction or legal authority to do so." *State ex rel. Zdanczewicz v. Snyder*, 131 Wis. 2d 147, 151, 388 N.W.2d 612, 614 (1986). In reviewing a habeas action, we apply a de novo standard to issues of law. *See State ex rel. McMillian v. Dickey*, 132 Wis. 2d 266, 276–77, 392 N.W.2d 453, 456 (Ct. App. 1986).

On appeal, Woods first asserts that upon reaching his MRD he should have been released into the community pursuant to § 53.11(7)(a), STATS., 1981–82,[5] or given a hearing on extending his MRD, but that neither occurred. Woods argues that because he was transferred from one correctional facility (RCI) to another (Sherrer) and was not released, his Fourteenth Amendment liberty interests were violated.

At issue is Woods' detention at the time he filed his habeas petition. *See State ex rel. Wojtycski v. Hanley*, 248 Wis. 108, 112, 20 N.W.2d 719, 721 (1945) ("The writ of habeas corpus is concerned solely with the legality of restraint at the time of the filing of the petition for

---

[5] Woods' sentence was imposed in 1983 subjecting him to the procedures under § 53.11(7)(a), STATS., 1981–82. Section 53.11 was renumbered as § 302.11, STATS., effective January 1, 1990. *See* 1989 Wis. Act 31, § 1629. Section 53.11(7)(a) reads in relevant part:

> An inmate or parolee having served the term for which he or she has been sentenced for a crime committed . . . less good time earned under this chapter and not forfeited as provided in this section, shall be released on parole . . . subject to all provisions of law and department regulations relating to paroled prisoners, until the expiration of the maximum term for which he or she was sentenced without deduction of such good time, or until discharged from parole by the department, whichever is sooner.

its issue . . . ."). Woods filed his petition while he was being held for allegedly violating his parole following his detainment at Sherrer. After the department determined that Woods had breached his parole, he was incarcerated at RCI. We therefore conclude that Woods' habeas petition concerns his present incarceration at RCI, not his earlier detainment at Sherrer.

Woods contends that when the State originally transferred him from RCI to Sherrer, he remained a prisoner. Consequently, he was subject to prison inmate rules at Sherrer, not probation and parole regulations. Woods argues that any violation of prison rules would have carried an administrative sanction or a loss of prison privileges, not revocation of parole.[6] Woods further argues that as a prisoner he was entitled to, but did not receive, a WIS. ADM. CODE § DOC 303.76 hearing to address the charges against him. He maintains that his incarceration for a violation of parole violates his liberty interests.

The State replies that upon being transferred to Sherrer, Woods' status changed from prisoner to parolee because: (1) Woods was beyond his MRD and had signed parole rules; (2) he was supervised by a parole agent, not prison staff members; and (3) he was permitted to enter the community with his parole agent in order to register as a sex offender, go to the bank, obtain a state ID, apply for a duplicate social security card and apply for a job. According to the State, that Woods was accompanied on his trips outside Sherrer "merely reflects an acceptable level of maximum supervision, as determined by the department on a case-by-case basis." The State also argues

---

[6] Specifically, Woods states that the two alleged violations would have, at most, resulted in the forfeiture of fifteen days of good time pursuant to § 53.11(2), STATS., 1981–82.

538

that it would have been "entirely inappropriate for the department to release [Woods] onto the street without a proper arrangement for an accommodation." The State concludes that Woods' temporary placement at a correctional facility after his MRD had no bearing on his status as parolee.

In determining Woods' status during his detainment at Sherrer, we begin with § 302.18(1), STATS., which provides that inmates of one prison may be transferred to another prison by the department. When Woods was sent to Sherrer, he was transferred from one state prison to another.[7] Upon arriving at Sherrer, Woods was subject to the rules of the correctional facility as mandated by § 302.18(5).[8]

Despite the fact that Woods signed parole rules and was supervised by a parole agent, his status did not change upon entering Sherrer. Woods was a prisoner because he was deprived of his liberty and held in custody at a state prison. *See C.D.M. v. State*, 125 Wis. 2d 170, 172, 370 N.W.2d 287, 288 (Ct. App. 1985). Our supreme court has defined custody as "imprisonment" and "legal restraint." *See State v. Gilbert*, 115 Wis. 2d 371, 378, 340 N.W.2d 511, 515 (1983) (confinement in jail as a condition of probation constitutes being in "custody" within the meaning of the sentence credit statute). Custody is distinct from parole because cus-

---

[7] Section 302.01, STATS., establishes that penitentiaries, such as RCI, and minimum security correctional institutions authorized under § 301.13, STATS., such as Sherrer, are state prisons.

[8] Section 302.18(5), STATS., states that "[a]ny person who is legally transferred by the department to a penal institution shall be subject to the same statutes, regulations and discipline as if the person had been originally sentenced to that institution, but the transfer shall not change the term of sentence."

tody involves "incarceration, or deprivation of liberty" while parole concerns "the conditional privilege of freedom and liberty." *State ex rel. Ludtke v. Department of Corrections*, 215 Wis. 2d 1, 11, 572 N.W.2d 864, 868–69 (Ct. App. 1997), *review denied*, 217 Wis. 2d 518, 580 N.W.2d 689 (1998) (a prisoner is not entitled to sentence credit for a parole term successfully served prior to a parole violation).

■ Here, Woods was in custody at Sherrer because there is no indication that he was granted the conditional liberty of a parolee. That Woods was permitted to leave Sherrer with his parole agent is inconsequential. Department regulations specifically permit prisoners in minimum security prisons, such as Sherrer, to move outside the correctional facility with an escort. *See* WIS. ADM. CODE § DOC 302.12(1)(e)3 ("residents may move in transit only under escort"). We therefore conclude that Woods was an inmate of a prison rather than a parolee at the time of the underlying rule violation, and we reverse and remand with directions that the petition for release on parole be granted.

*By the Court.*—Order reversed and cause remanded with directions.