STATE of Wisconsin EX REL. Leroy RIESCH,
Petitioner-Appellant-Petitioner,

v.

David SCHWARZ, Administrator, Division of Hearing and Appeals, Respondent-Respondent.

Supreme Court

*No. 03–0920. Oral argument January 5, 2005.—Decided February 15, 2005.*

2005 WI 11

(Also reported in 692 N.W.2d 219.)

25

For the petitioner-appellant-petitioner there were briefs by *Christopher J. Cherella* and *Law Offices of Christopher J. Cherella,* Milwaukee, and oral argument by *Christopher J. Cherella.*

For the respondent-respondent the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Leroy Riesch, seeks review of an unpublished decision of the court of appeals affirming an order denying a petition for writ of certiorari.[1] Riesch contends that the respondent, the Division of Hearings and Appeals, acted outside its jurisdiction and contrary to Wisconsin law by revoking his parole status. Specifically, he claims that such a status never existed because he was not released from physical custody and placed on parole. Accordingly, he asserts that the State cannot revoke a status that never existed.

¶ 2. Although the issue in this case is now moot as to Riesch, we nevertheless address the merits of his argument because it is of great public importance and arises frequently enough to warrant a definitive decision to guide the circuit courts. We determine that Riesch had attained the status of a parolee after reaching his mandatory release date, despite the fact that he was not released from physical custody. Thus, we conclude that the Division of Hearings and Appeals did not act outside its jurisdiction or contrary to law when revoking his parole status. We therefore affirm the decision of the court of appeals.

I

¶ 3. In 1993, Riesch was sentenced to serve eight years in prison under the old, indeterminate sentencing system. His mandatory release date was set for July 21,

---

[1] *State ex rel. Riesch v. Schwarz*, No. 03–0920, unpublished order (Wis. Ct. App. March 22, 2004) (affirming an order denying a petition for writ of certiorari, entered in the circuit court for Dodge County, Daniel W. Klossner, Judge).

1998. In anticipation of this date, Riesch was provided with a copy of parole supervision rules on June 29, 1998.[2]

¶ 4. Under his parole supervision rules, Riesch was required to avoid unlawful activity and conduct that was not in the best interest of the public or his rehabilitation. He was to abide by the rules of any detention or correctional facility in which he was confined. Furthermore, he was to give true and correct information in responses to inquiries by his agent. Riesch refused to sign these rules.

¶ 5. Prior to his release date, Riesch's parole agent determined that his client needed to reside at an approved halfway house or residence because of a need for treatment associated with his underlying conviction for sexual assault. After learning that he would need to participate in treatment programming at such a facility, Riesch stated that he would not do so. Due to this recalcitrance, a parole hold was lodged against Riesch and he was transported on July 21, 1998, from prison to the Dodge County Jail.

¶ 6. Upon his arrival at the jail, Riesch was not cooperative with the staff and would not provide information regarding his medical status. Additionally, he refused to sign fingerprint cards after his prints were taken. Riesch maintained that it was a violation of his constitutional rights to force him to sign anything.

¶ 7. Riesch's parole agent came to see him on July 27, 1998, to obtain a written or verbal statement from him concerning his case. The agent asked that Riesch be shackled before she talked to him. Riesch became

---

[2] Our recitation of the background of the case is based in part upon the findings of fact of the Administrative Law Judge, David R. Braithwaite.

upset and would not see the agent, as he did not want to be shackled. Consequently, he did not give a statement to her.

¶ 8. That same day, Riesch's parole agent initiated a revocation against Riesch on grounds that he failed to have a suitable residence, failed to cooperate with jail staff, failed to obey jail rules, and failed to give a statement to the agent. On September 21, 1998, an Administrative Law Judge issued a written decision revoking Riesch's parole. The Division of Hearings and Appeals (hereinafter "the Division") affirmed that decision.

¶ 9. On May 19, 1999, Riesch filed a petition for writ of certiorari, which was dismissed as untimely. He appealed, and the court of appeals affirmed. This court then denied the petition for review. Riesch's counsel filed next a petition for writ of habeas corpus. Subsequently, the parties stipulated that Riesch's petition for writ of certiorari should be reinstated.[3]

¶ 10. After reinstating Riesch's petition for writ of certiorari, the circuit court denied the petition on the merits. In doing so, it relied upon the *Macemon* cases, *State ex rel. Macemon v. McReynolds*, 208 Wis. 2d 594,

---

[3] Despite this stipulation, the State now asks this court to dismiss Riesch's appeal for want of subject matter jurisdiction. According to the State, when Riesch filed his petition for writ of habeas corpus, he was subject only to the restraint associated with being on probation, which was imposed in an unrelated case. Like the court of appeals, we decline to address this argument. We do so in part because this case is moot. Additionally, we note that the record is unclear as to the circumstances surrounding Riesch's original disposition, that is, whether the probation imposed was for a different sentence or whether it was part of a continuous sentence. Thus, we choose instead to focus on the underlying issue.

29

561 N.W.2d 779 (Ct. App. 1997) (*Macemon I*), and *State ex rel. Macemon v. Christie,* 216 Wis. 2d 337, 576 N.W.2d 84 (Ct. App. 1998) (*Macemon II*). Riesch appealed, and the court of appeals summarily affirmed the decision. It deemed *Macemon II* controlling. Riesch sought review of that decision and this court accepted his petition.

¶ 11. Since granting the petition for review in this case, we have determined that the issue presented is moot as to Riesch. "An issue is moot when its resolution will have no practical effect on the underlying controversy." *State ex rel. Olson v. Litscher,* 2000 WI App 61, ¶ 3, 233 Wis. 2d 685, 608 N.W.2d 425. Riesch's issue satisfies this definition because he has been discharged from the conviction underlying his parole revocation, and that revocation did not delay the start of the probationary term he is now serving.

¶ 12. Appellate courts generally decline to consider moot issues but may do so under certain circumstances. *State v. Morford,* 2004 WI 5, ¶ 7, 268 Wis. 2d 300, 674 N.W.2d 349. For example, this court has held that it may decide an otherwise moot issue if it is of great public importance or arises frequently enough to warrant a definitive decision to guide the circuit courts. *Id.* (citing *In re John Doe Proceeding,* 2003 WI 30, ¶ 19, 260 Wis. 2d 653, 660 N.W.2d 260). In this case, the issue presented falls within these exceptions, and therefore, we reach its merits.

II

¶ 13. Certiorari review for parole revocation is limited to four questions: "(1) whether the agency stayed within its jurisdiction; (2) whether it acted

according to law; (3) whether its action was arbitrary, oppressive or unreasonable, representing its will, not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question." *State ex rel. Thorson v. Schwarz,* 2004 WI 96, ¶ 12, 274 Wis. 2d 1, 681 N.W.2d 941.

¶ 14. Here, Riesch's claim implicates the first two inquiries. He submits that the Division acted outside its jurisdiction and contrary to law in revoking his parole status because he was not on parole at the time of revocation. Resolution of these matters present questions of law subject to independent appellate review. *See State ex rel. Curtis v. Litscher,* 2002 WI App 172, ¶ 10, 256 Wis. 2d 787, 650 N.W.2d 43.

### III

¶ 15. Riesch's arguments in this case present a single issue. We must determine whether an inmate such as Riesch can have the status as a parolee and be subject to revocation proceedings even though he has not been released from physical custody.

¶ 16. According to Riesch, he was not a parolee at the time of his revocation because he was not released from physical custody after reaching his mandatory release date. He submits that custody and parole are mutually exclusive concepts. Riesch further contends that, because inmates must be released on their mandatory release date, his transfer from a state correctional facility to a county jail on July 21, 1998, meant he was a prisoner rather than a parolee when he committed the acts underlying his revocation. We address these arguments in turn.

31

¶ 17. Riesch begins his analysis by examining the terms "custody" and "parole." He relies on two sentence credit cases, *State v. Gilbert,* 115 Wis. 2d 371, 340 N.W.2d 511 (1983), and *State ex rel. Ludtke v. DOC,* 215 Wis. 2d 1, 572 N.W.2d 864 (Ct. App. 1997), for the proposition that the terms are readily distinguishable. He advances that custody involves "incarceration, or deprivation of liberty," but that parole pertains to "the conditional privileges of freedom and liberty." *Ludtke,* 215 Wis. 2d at 11. Because Riesch remained in custody at all times relevant to this case, he claims that he did not have "the conditional privileges of freedom and liberty" necessary to be considered paroled.

¶ 18. Although we agree with Riesch that custody and parole are distinguishable in certain contexts, we reject the notion that the terms are always mutually exclusive. A parole hold is a classic case in point. For example, suppose Riesch had made it "out onto the streets" but was taken to the county jail as a result of a violation of his parole rules. Until he went through the proper channels, including a final revocation hearing, he would possess the dual status of parolee and prisoner. Thus, the concepts of parole and custody can and do overlap.

¶ 19. Riesch's next argument is that the continuation of his custody after reaching his mandatory release date meant that he was a prisoner rather than a parolee when he committed the acts underlying his revocation. He relies on two cases to support this assertion, *State ex rel. Woods v. Morgan,* 224 Wis. 2d 534, 591 N.W.2d 922 (Ct. App. 1999) and *Olson,* 233 Wis. 2d 685. Riesch contends that those cases are much more relevant to his factual scenario than the *Macemon* cases, upon which the lower courts relied.

¶ 20. According to Riesch, the *Macemon* cases are distinguishable because they provided no clear indication as to the status of Macemon as a "prisoner" or a "parolee" at the time of his refusal to follow the rules of the Department of Corrections (DOC). In the alternative, Riesch acknowledges that there may be a conflict between *Macemon* and the *Woods* and *Olson* cases. He therefore asks this court to make clear that *Macemon* was "effectively reversed" insofar as it conflicts with *Woods* and *Olson*.

¶ 21. We are not persuaded by Riesch's arguments. *Woods* and *Olson* are unlike the present case because the inmates in those cases did nothing to warrant their continued detention at the time of their mandatory release date. In contrast, the inmate in the *Macemon* cases, like Riesch, violated the conditions of his parole immediately and simultaneously with his mandatory release date. Accordingly, a parole hold was placed on him and he was revoked, despite the fact that he was kept in continuous custody.[4]

¶ 22. In *Woods,* the inmate appealed an order denying his petition for writ of habeas corpus. Woods had been incarcerated at the Racine Correctional Institution and was transferred to the Sherrer Correctional Center upon reaching his mandatory release date. Four days after arriving at Sherrer, he made sexual overtures

---

[4] Although Riesch questions the status of Macemon as a parolee, we do not. In *State ex rel. Macemon v. Christie,* 216 Wis. 2d 337, 338, 576 N.W.2d 84 (Ct. App. 1998), the court of appeals began its opinion by stating: "Robert Macemon appeals from a circuit court order denying his writ of certiorari which challenged his parole revocation." Furthermore, the court described that appeal as Macemon's "second challenge to his revocation." *Id.* Finally, it noted that in its earlier case it had "determined that Macemon's parole was *revoked,* not denied." *Id.* at 340–41.

to another inmate and was placed on a parole hold. The DOC determined that the Sherrer incident was a parole violation, revoked Woods's parole, and recommitted him to the Racine Correctional Institution.

¶ 23. On appeal, Woods argued he was still a prison inmate when the State revoked his parole. Although he had signed parole rules, was supervised by a parole agent, and was permitted to leave the facility with his agent, the court of appeals agreed that Woods was a prison inmate. *Woods,* 224 Wis. 2d at 536. Significant to the court's decision was the fact that the conduct underlying Woods's parole hold took place several days after his mandatory release. *Id.* at 538–40. The State acknowledged that the record was silent as to why Woods was placed at Sherrer after reaching his mandatory release date. *Id.* at 536, n. 3.

¶ 24. In *Olson,* the inmate petitioned the court of appeals for writ of habeas corpus after he was detained past his mandatory release date. Olson had been transferred from one correctional facility to another on his release date because the DOC was unable to locate a suitable residence for him. Again, there was no indication that Olson had done anything to warrant the continuous custody at that time. Accordingly, the State conceded that he was entitled to release when he reached his mandatory release date and that no statute or administrative rule authorized the DOC to detain him past that point. The court of appeals agreed. *Olson,* 233 Wis. 2d 685, ¶ 1.

¶ 25. Unlike the inmates in *Woods* and *Olson,* Riesch engaged in conduct that warranted custody at the time of his mandatory release date. Specifically, he committed the first of the violations underlying his parole by refusing to cooperate with his social worker at the Kettle Moraine Correctional Institution (KMCI) in

arranging a suitable residence plan upon his release. This took place simultaneous to the date of his mandatory release, and a parole hold was immediately lodged against him.[5] In its decision, the Division explained why the DOC's action was not surprising in light of Riesch's failure to cooperate with his supervision plan:

> Mr. Reisch[6] was placed in jail on his mandatory release date because he stubbornly refused to cooperate with the department's efforts to implement a suitable supervision plan. His resistance to supervision began the very day he was given a copy of the rules of supervision, which he refused to sign and continued right up to the day of his release and beyond. Based on his often stated objections to the parole planning process, I am satisfied that Mr. Reisch knew full well why he had been taken to jail rather than being simply released to the community. The department was not required to wait until Mr. Reisch committed a crime before it took steps to protect the public. That is particularly true since Mr. Reisch was a sex offender who was totally rejecting active supervision. That stubborn contempt for the parole supervision process could not be ignored and required active intervention to protect the public from the risk that Mr. Reisch might commit serious crimes if he were simply released to the community under his own terms. His behavior left the department no real choice other than revocation of parole and further confinement.

¶ 26. Because Riesch's first violation occurred immediately and simultaneously with his mandatory release date, we find the *Macemon* cases instructive. In *Macemon I*, the inmate argued that the DOC unlawfully

---

[5] Both the Administrative Law Judge and the Division found that Riesch's violations began on his mandatory release date, July 21, 1998, and continued through July 27, 1998.

[6] Throughout its decision, the Division mistakenly refers to Riesch as "Reisch."

detained him beyond his scheduled release date. The DOC had issued an order to hold Macemon in custody because of his refusal to wear an electronic monitoring bracelet and to participate in postconfinement sex offender treatment. The court of appeals held that the DOC had authority to require mandatory release parolees to submit to an electronic monitoring bracelet. *Macemon I,* 208 Wis. 2d at 598. It further concluded that the evidence reasonably supported the imposition of the DOC's two conditions. *Id.* at 599.

¶ 27. In *Macemon II,* the inmate asserted, among other things, that he was denied the mandatory release to which he was entitled by statute. The court of appeals dismissed this claim in summary fashion. First, it noted that Macemon's parole was revoked, not denied, and therefore there was no factual basis for the claim. *Macemon II,* 216 Wis. 2d at 341. Second, it rejected an argument strikingly similar to the one advanced by Riesch in this case:

> Macemon also argues that "release" never took place because he "has *not been out of prison clothes . . .* was handcuffed and leg shackled . . . [and] in continuous confinement without Release." While it is true that Macemon has never made it "out onto the streets," his release from prison was processed. However, because he refused to wear a monitoring bracelet and to participate in postconfinement sex offender treatment, *see State ex rel. Macemon v. McReynolds,* 208 Wis. 2d 594, 595, 561 N.W.2d 779, 780 (Ct. App. 1997), he was immediately taken into custody for failing to abide by the conditions of parole and taken to the Racine County Jail.

*Id.* at 341, n. 2.

¶ 28. Neither *Macemon I* nor *Macemon II* stand for the proposition that a person can be revoked from

parole before being granted parole status. However, they do support the State's claim that a person can attain the status of a parolee without being released from physical custody. Given the foregoing discussion, we are satisfied that *Macemon* rather than *Woods* and *Olson* control this case. Even if *Macemon* were not controlling, however, we would still reject Riesch's claim.

¶ 29. The holding Riesch seeks today is a bright-line rule that elevates form over substance. He contends that inmates must always be released from physical custody before any revocation is commenced, regardless of whether they have signed parole rules, complied with parole rules, or cooperated with their agent. In essence, he is asking for a ritual where the DOC releases uncooperative inmates just outside the prison walls on their mandatory release dates before subsequently placing parole holds upon them. As the State succinctly stated at oral argument:

> [W]hen your violation is instantaneous, occurring at the same minute, I think it would be really a charade to say, "well, we have to let this person go, take off the handcuffs, and walk 20 paces outside of the state correctional institution before we can slap the cuffs on him and take him to the nearest county jail to lodge a parole hold." I don't think that makes any sense.

We agree.

¶ 30. In the end, we are mindful that the DOC is not free to hold inmates indefinitely for such problems as failure to find suitable housing on its part. *Olson,* 233 Wis. 2d at 690. However, we also recognize that the DOC has substantial discretionary authority to develop the rules and conditions for release. *Macemon I,* 208

Wis. 2d at 597.[7] Where inmates violate these terms immediately and simultaneously with their scheduled mandatory release dates, the DOC should be able to maintain continuous custody, even though that person's status changes from a prisoner serving a sentence to a parolee detained on a parole hold. That is precisely what happened in both this case and *Macemon*. We therefore conclude that the Division did not act outside its jurisdiction or contrary to law when revoking Riesch's parole.

## IV

¶ 31. In sum, we determine that Riesch had attained the status of a parolee after reaching his mandatory release date, despite the fact that he was not released from physical custody. Thus, we conclude that the Division did not act outside its jurisdiction or contrary to law when revoking his parole status. We therefore affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[7] There is no indication that Riesch's parole rules here were either arbitrary or unreasonable. If they were, then the arguments and the analysis would present a different case.