NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 4, 2011[*]
Decided May 5, 2011

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 10-3291

| | |
|---|---|
| KOFI EASTERLING, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 08-CV-1068 |
| SPENCER SIARNICKI, et al., *Defendants-Appellees.* | J.P. Stadtmueller, *Judge*. |

**O R D E R**

In this suit under 42 U.S.C. § 1983, Kofi Easterling seeks compensation and injunctive relief for his time spent in state custody after Wisconsin parole officials revoked his extended supervision. The defendants, all employees of the Wisconsin Department of Corrections moved for summary judgment, and the district court ruled in their favor. Easterling appeals, and we affirm the district court's judgment.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

None of the documents Easterling submitted at summary judgment were sworn, but Easterling's complaint was, so the district court drew its factual narrative from the portions of defendants' proposed findings of fact that are supported by admissible evidence and from Easterling's complaint. We do so as well, but construe those facts in Easterling's favor. See E.D. WIS. CIV. L.R. 56(b)(4); *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 359-60 (7th Cir. 2009); see also *Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996).

Easterling was convicted of several state firearm offenses and scheduled for release to extended supervision on October 14, 2008. Based on his criminal history, Department officials designated Easterling for "high risk supervision," a process that required him to wear an electronic tracking device and reside in a transitional-living facility because he did not have a verifiable residence. Before his release, Easterling wrote two letters to defendant Spencer Siarnicki, his supervising probation and parole agent, suggesting that he would not comply with the terms and conditions of his release. (Easterling disputes this characterization, but resolving this dispute is not necessary.) During this pre-release period, Easterling also refused to meet with defendants to discuss the rules that would govern his supervision.

On October 6, 2008, one week before his scheduled release, Siarnicki and his immediate supervisor, defendant Beverly Dillon, agreed that Siarnicki would speak to Easterling on his scheduled release date to determine whether he intended to comply with the terms of his release. If he refused, Siarnicki was to detain Easterling and transfer him to another facility pending a decision whether to seek revocation of his extended supervision. On the designated release date, Siarnicki asked Easterling whether he would comply with the rules governing his supervision. According to Siarnicki, Easterling became agitated and threatened that "I am not going on the bracelet" and "you can't make me do EMP or Transitional Living." Siarnicki and Debra Fritz, another probation agent and a third named defendant, detained Easterling, transferred him to another detention facility, and placed him on a "hold" pending an investigation and determination about how to proceed.

The following week, Siarnicki and Dillon reviewed the matter and decided to pursue revocation of Easterling's supervised release. An administrative law judge heard the matter two months later in December, 2008, and concluded that Easterling had violated the conditions of his supervised release by refusing his electronic monitoring and placement conditions and by threatening Siarnicki and Fritz. The ALJ then revoked Easterling's parole and extended supervision and ordered him reincarcerated; the revocation was sustained on appeal.

Easterling responded with this suit under § 1983 against the five named defendants, contending that they had no authority to detain him beyond his release date. He sought

pecuniary damages for what he alleged was his unlawful, post-release detention and an injunction mandating the firing of the named defendants. The defendants moved for summary judgment, arguing, among other things, that Easterling's relief was barred by qualified immunity.

The district court first granted summary judgment in favor of the warden because it found no evidence that he personally participated in any conduct that affected Easterling. The court then granted summary judgment to the remaining defendants based on qualified immunity. It reasoned that although Easterling was subject to a mandatory release date, he also was subject to the rules governing that release – rules entrusted to the administration of the Department of Corrections. Wisconsin courts, the district court observed, have upheld the Department's practice of electronically monitoring inmates on supervised release, and the Wisconsin Supreme Court has upheld the practice of detaining a parolee immediately upon the onset of parole, followed by a hearing to revoke release, where the prisoner has stated that he would not comply with the rules governing his release. As a result, the district court concluded, a reasonable Department officer could have concluded that immediately detaining Easterling was warranted when he refused to comply with the terms of his supervised release.

On appeal Easterling maintains that the defendants violated due process by never releasing him from custody. He contends that jurisdiction to revoke extended supervision under WIS. STAT. § 302.11(9)(am) lies only after an inmate is physically released from custody to extended supervision; he argues that was never released because Siarnicki and Fritz restrained him and transferred him to another prison facility on the date of his mandatory release.

Easterling's claim is foreclosed by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* bars a plaintiff's suit under § 1983 where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" unless the plaintiff can show that the conviction or sentence has already been invalidated. *Heck*, 512 U.S. at 487; see *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006). *Heck* applies to both a prisoner's original sentence and to reimprisonment upon revocation of parole. See *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005); *Littles v. Bd. of Pardons and Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995). Were Easterling's claim of unlawful detention successful, it would necessarily imply the invalidity of his revoked supervised release because the detention and revocation were based on the same findings that Easterling refused to comply with his conditions of release. Because Easterling has not alleged, much less shown, that he has overturned revocation of release (and, in fact, the record reflects that any such challenge failed), his claim is barred by *Heck*. *See Knowlin v. Thompson*, 207 F.3d 907, 909 (7th Cir. 2000).

Even if *Heck* were inapplicable, Easterling's claim fails on the merits. The claim depends on whether Wisconsin officials deprived him of a liberty interest without due process. See *Swarthout v. Cooke*, 131 S. Ct. 859, 862 (2011). Easterling's supervised release under Wisconsin's bifurcated sentence system is mandatory, so it is a protected liberty interest, see *Felce v. Fiedler*, 974 F.2d 1484, 1491-92 (7th Cir. 1992). But Wisconsin law also considers prisoners under extended supervision to remain "in legal custody of the department," *see* WIS. STAT. § 302.113(8m)(a), continuously subject to the rules and conditions set forth by the Department of Corrections, see *id.* § 302.113(7). The Department, therefore, had authority to require Easterling to wear a tracking device or to live in a temporary living facility it designated as a condition of release. See*, e.g., State v. Washington*, 775 N.W.2d 535, 540 (Wis. Ct. App. 2009); *Macemon v. McReynolds*, 561 N.W.2d 779, 781 (Wis. Ct. App. 1997). And Wisconsin law terminates a prisoner's liberty interest *immediately* upon his release to mandatory supervision if the prisoner refuses to acknowledge or abide by the rules governing his release. See *State ex rel. Riesch v. Schwarz*, 692 N.W.2d 219, 225-26 (Wis. 2005). The only question, then, is whether Easterling received a hearing appropriate to resolve the factual question of his refusal. Easterling never said that he did not, and the record reflects that state authorities conducted a hearing and found that he so refused. As a result, Easterling received any process that was due.

AFFIRMED.