¶ 188.
PATIENCE DRAKE ROGGENSACK, C.J.
(dissenting). The United States Supreme Court and *204 this court have concluded that the ex post facto clauses of both Constitutions forbid enactment of laws that impose punishment for an act that was not punishable at the time the act was committed or that impose punishment that is greater than it was at the time the act was committed. Peugh v. United States, _U.S. _, 133 S. Ct. 2072, 2078 (2013); Weaver v. Graham, 450 U.S. 24, 28 (1981); State v. Kurzawa, 180 Wis. 2d 502, 511, 509 N.W.2d 712 (1994). The lead opinion attempts to expand the definition by which we evaluate whether a statute violates the ex post facto clauses of the federal and state constitutions because it concludes that when a law changes after conviction or sentencing, an ex post facto violation occurs.[1]
¶ 189. Therefore, although I conclude that one of Aman Singh's three crimes under review herein has potential for an ex post facto violation under the correct ex post facto analysis, I do not join the lead opinion because I conclude the lead opinion's definition of ex post facto law is incorrect. Furthermore, I agree with the court of appeals' conclusion that the procedural change in the duties of circuit courts did not contravene ex post facto prohibitions.[2] The lead opinion's expansion of the definition of an ex post facto law misstates United States Supreme Court precedent and the precedent of this court. Accordingly, I would reverse the court of appeals' decision in part; affirm it in part; and I respectfully dissent from the lead opinion herein.
*205 I. BACKGROUND
¶ 190. The lead opinion and the concurrence/dissent of Justice Annette Ziegler ably set out the factual foundation that bears on Singh's claim. Therefore, I repeat only those facts necessary to enable the reader to understand the discussion that follows.
¶ 191. The issues in this appeal arise from Singh's confinement in prison as a result of prescription forgeries for narcotics in Waukesha and Milwaukee counties and from a statutory enactment, effective October 1, 2009 and repealed August 3, 2011, that provided an opportunity for a confined inmate to earn positive adjustment time (PAT) that was applied to reduce the inmate's period of confinement. The legislative repeal of PAT permitted credit for PAT earned between October 1, 2009 and August 3, 2011. Wis. Stat. § 973.198.
A. Dates of Criminal Conduct
¶ 192. Singh committed the crimes that we review herein on three different dates. He committed the first offense October 16, 2008 in Waukesha County, before the October 1, 2009 effective date of the PAT statutes, Wis. Stat. § 302.113 (2009-10) and Wis. Stat. § 304.06 (2009-10).
¶ 193. Singh committed his second offense July 25, 2011 in Milwaukee County, while PAT was possible. He committed his third offense on August 10, 2011 in Milwaukee County, after PAT was repealed on August 3, 2011.
B. Singh's Convictions
¶ 194. On March 29, 2010, Singh pled guilty in Waukesha County Circuit Court to the crime commit *206 ted October 16, 2008. Four other alleged violations of Wis. Stat. § 961.43(l)(a) were dismissed but read-in.
¶ 195. On November 9, 2011, at a joint plea hearing, Singh pled guilty to the Milwaukee County July 25, 2011 offense, and to the Milwaukee County August 10, 2011 offense. A joint sentencing hearing was scheduled for December 29, 2011.
C. Singh's Sentences
f 196. On April 29, 2010, the Waukesha County Circuit Court sentenced Singh to a bifurcated prison sentence of 18 months' confinement and 18 months' extended supervision for the 2008 crime. The court stayed imprisonment and imposed three years' probation conditioned on six months' jail time with Huber privileges.
¶ 197. On December 13, 2011, the Waukesha County Circuit Court revoked Singh's probation due to Milwaukee County offenses and vacated the stay of the initial sentence of 18 months' confinement and 18 months' extended supervision. Any opportunity for PAT based on confinement in prison for the Waukesha County crime could occur only if Singh's confinement occurred before August 3, 2011 when PAT was repealed.[3] Wis. Stat. § 973.198. However, Singh's first day of confinement for any crime was January 4, 2012.
*207 ¶ 198. On August 6, 2010, the Waukesha County Circuit Court entered an order, which related that, before Singh's confinement began, the court had granted Singh 159 days of sentence credit for conditional jail time. On December 13, 2011, pursuant to the order of the Division of Hearing and Appeals, Singh received an additional 234 days of sentence credit for custody subsequent to revocation and prior to Singh's receipt at prison. Therefore, as of Singh's first day of confinement, he received 393 days of sentence credit, approximately 13 months, that was applied against his sentence for the Waukesha County crime.
¶ 199. On July 14, 2015, the Waukesha County Circuit Court entered an amended judgment that documented the credit given and also converted the Waukesha County sentence to one year in jail, with credit for time served. The court also vacated the 18 months of extended supervision initially imposed.
¶ 200. On December 29, 2011, Singh was sentenced for both Milwaukee County offenses. For the July 25, 2011 offense, he was sentenced to 24 months' initial confinement and 36 months' extended supervision, to be served consecutively to the Waukesha County sentence, but concurrently with the other Milwaukee County sentence. His first day of confinement for the July 25, 2011 crime is uncertain due to the modification of the Waukesha County judgment.[4]
¶ 201. For the August 10, 2011 offense, Singh was sentenced to 24 months' initial confinement and 36 months' extended supervision, to run concurrently *208 with all other sentences.[5] On the sentence for the August 10, 2011 Milwaukee County crime, Singh had no opportunity to earn PAT because the PAT statutes were repealed August 3, 2011.
II. DISCUSSION
A. Standard of Review
¶ 202. Singh brings an as-applied constitutional challenge to Wis. Stat. § 973.198, claiming that it is an unconstitutional ex post facto law when applied to him. In such a challenge, we assume that the statute is constitutional, just as we do when a facial challenge to a statute is made on constitutional grounds. Tammy W-G. v. Jacob T, 2011 WI 30, ¶ 47, 333 Wis. 2d 273, 797 N.W.2d 854. However, we do not presume that the State has applied the statute in a constitutional manner. Id., ¶ 48. Rather, our test of the statute's application is driven by the analysis for the right that the proponent asserts has been burdened by the statute. Id., ¶¶ 49-51.
¶ 203. Here, Singh asserts in his petition for writ of habeas corpus that application of Wis. Stat. § 973.198 to the crimes he committed and for which he was convicted and sentenced would burden his personal liberty in contravention of the ex post facto provisions of the federal and state constitutions.
*209 ¶ 204. Whether a petition for writ of habeas corpus has been properly denied presents a mixed question of fact and law. State v. Pozo, 2002 WI App 279, ¶ 6, 258 Wis. 2d 796, 654 N.W.2d 12. We will not overturn findings of historic fact unless they are clearly erroneous. Id. However, under the facts presented, we independently review as a question of law whether habeas should have been granted. State ex rel. Woods v. Morgan, 224 Wis. 2d 534, 537, 591 N.W.2d 922 (Ct. App. 1999). Here, the historic facts are not in dispute. Therefore, we decide whether a writ of habeas corpus should have issued as a matter of law. Id.
B. Ex Post Facto Prohibitions
1. General principles
¶ 205. Both the United States Constitution and the Wisconsin Constitution have clauses that prohibit ex post facto laws.[6] Ex post facto is a Latin phrase that means "after the fact." Black's Law Dictionary 661 (9th ed. 2009). The question this case presents is: which fact is the determining "fact" when evaluating a contention that a particular law violates ex post facto clauses. Stated otherwise: whether the correct ex post facto analysis turns on the fact of crime commission, the fact of conviction for the crime, the fact of sentencing for the crime, or some combination thereof is the question presented in this review.
¶ 206. The United States Supreme Court interprets the federal constitution's ex post facto clause as prohibiting laws that change the punishment for a crime after commission because crime commission is the act for which notice of punishment is required. *210 Collins v. Youngblood, 497 U.S. 37, 42 (1990). We follow United States Supreme Court precedent that interprets the federal constitution's prohibition of ex post facto laws when interpreting the Wisconsin Constitution's ex post facto clause. State v. Thiel, 188 Wis. 2d 695, 699, 524 N.W.2d 641 (1994).
¶ 207. Thiel is an important case because in it we reviewed United States Supreme Court decisions that had broadened the definition of ex post facto laws in ways that the Supreme Court later concluded were erroneous. Id. at 699-703. In following Supreme Court precedent, initially, we had adopted that more expansive definition of ex post facto laws. Id. at 701. However, we later concluded our expansion was erroneous because we had done so in reliance on subsequently overruled Supreme Court decisions. Id. at 703.
¶ 208. To explain further, we noted in Thiel that the United States Supreme Court in Collins withdrew language from Kring v. Missouri, 107 U.S. 221 (1883), which included within the definition of ex post facto "laws that altered a defendant's situation to his or her disadvantage." Thiel, 188 Wis. 2d at 700.
¶ 209. We had earlier adopted this broad definition of ex post facto laws to include laws that altered a defendant's situation to his or her disadvantage in State ex rel. Mueller v. Powers, 64 Wis. 2d 643, 646, 221 N.W.2d 692 (1974). In Mueller, we relied on Medley, Petitioner, 134 U.S. 160, 171 (1890). Mueller, 64 Wis. 2d at 645-46. Medley had followed the expansive definition in Kring that, in Collins, the Supreme Court concluded was erroneous.[7] See Medley, 134 U.S. at 171.
*211 ¶ 210. Before us, Thiel had relied on the Mueller recitation that expanded the definition of ex post facto laws to include laws that "alter the situation of an accused to his or her disadvantage." Thiel, 188 Wis. 2d at 702. Because we follow United States Supreme Court precedent when interpreting both the United States Constitution's and the Wisconsin Constitution's ex post facto clauses, we concluded that Mueller set forth an incorrect definition and we withdrew that overly broad definition from our interpretations of ex post facto clauses. Id. at 703.
¶ 211. Collins was clear in overruling prior United States Supreme Court decisions that had held that any change in the law that alters the situation of a party to his disadvantage violated the ex post facto prohibition and explicitly reaffirmed the definition set out in Calder v. Bull, 3 U.S. 386, 390-92 (1798):
1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law *212 required at the time of the commission of the offence, in order to convict the offender.
Collins, 497 U.S. at 42 (emphases removed).
¶ 212. Subsequent to Collins and in order to avoid future errors about the definition of ex post facto laws under the Wisconsin Constitution, we held:
[A]n ex post facto law, prohibited by the Wisconsin Constitution, is any law: "which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed."
Thiel, 188 Wis. 2d at 703 (quoting Collins, 497 U.S. at 42).
¶ 213. United States Supreme Court decisions issued after Collins, consistently employ crime commission as the act for which notice of punishment is required under the ex post facto clause. Peugh, 133 S. Ct. at 2078; see also Weaver, 450 U.S. at 28-29 (citing 12 cases).[8] As the Supreme Court explained in Peugh:
The Framers considered ex post facto laws to be "contrary to the first principles of the social compact and to every principle of sound legislation." The Federalist No. 44, p. 282 (C. Rossiter ed. 1961) (J. Madi *213 son). The Clause ensures that individuals have fair warning of applicable laws and guards against vindictive legislative action.
Peugh, 133 S. Ct. at 2084-85. Stated otherwise, crime commission is the act for which notice of consequences is required. "[T]he principle on which the Clause is based — the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties — is fundamental to our concept of constitutional liberty." Marks v. United States, 430 U.S. 188, 191 (1977); Kurzawa, 180 Wis. 2d at 511.
¶ 214. The lead opinion employs a new definition of ex post facto law when it changes the act from which ex post facto effect is measured to include a temporary change in a law that was repealed subsequent to conviction and sentencing.[9] The lead opinion states, "the early release provisions of 2009 Wis. Act 28 were retroactively in effect when Singh was convicted and sentenced for the first offense, [the Waukesha County crime] as well as at the time he committed the second offense."[10]
¶ 215. The definition created by the lead opinion affects defendants who could not earn PAT when they committed the criminal act, but due to a statutory enactment, could earn it at the time of sentencing even though the opportunity was repealed before the start of confinement.[11] No United States Supreme Court opinion supports the lead opinion's definition of ex post facto law, nor does any opinion from this court.
¶ 216. In regard to Singh's first crime, which was committed in Waukesha County October 16, 2008, *214 there was no opportunity for PAT in 2008. In 2009, PAT was enacted. Singh was convicted and sentenced for the 2008 crime in 2010. The 2009 legislation permitted him to benefit until PAT was repealed August 3, 2011, if he were confined between October 1, 2009 and August 3, 2011.
¶ 217. Because the August 3, 2011 repeal of PAT caused the law to be as it was in 2008 when Singh committed the first of his crimes, the 2011 legislation did not impose punishment that was greater than it was at the time Singh committed the first of his crimes. In addition, Singh was not confined for any of his crimes until January 4, 2012, after PAT was repealed. Therefore, no ex post facto violation occurred with the repeal of PAT for the 2008 Waukesha County crime, nor was he denied PAT he earned before the repeal.
¶ 218. In regard to Singh's second crime, which was committed in Milwaukee County on July 25, 2011, there was the opportunity for PAT and accordingly, the potential for an ex post facto violation if the PAT he earned had an effect on the duration of his confinement. However, from the record before us, it is not possible to make that factual determination, and even if it were, habeas will not provide relief under the facts of this case.
¶ 219. The potential for an ex post facto violation on the second crime due to repeal of PAT is not possible to determine due to the following circumstances presented by this case: (1) Singh's third crime was committed on August 10, 2011, after PAT was repealed, and therefore, had no potential for PAT; (2) initially, Singh received the same Wis. Stat. § 973.01 sentence for the third crime as he received for his second crime, 24 months' confinement and 36 months' extended supervision and the sentences were to be served con *215 currently; (3) however, the sentence for Singh's second crime also was consecutive to the sentence for Singh's first crime; (4) the sentence for Singh's first crime, for which he initially was sentenced pursuant to § 973.01, was converted to a one-year jail sentence, with extended supervision vacated, for which he received 13 months' credit and from which he was released on "time served."
¶ 220. If the modification of the Waukesha County sentence caused it to be only a one-year jail sentence for which he was given 13 months' credit, then the sentences for his second and third crimes both began January 4, 2012. Because the third crime had no opportunity to earn PAT, it would not matter whether Singh earned PAT on the sentence for his second crime because he would not have been released from confinement any earlier due to the concurrent sentence for his third crime.
¶ 221. In addition, Singh is no longer confined. He was released to extended supervision on June 2, 2014; therefore, the remedy of habeas — release from custody — provides nothing to Singh at this point. It may be that Singh can prove, as a factual matter, that he was confined on the second sentence longer than should have occurred and that some type of relief may be accorded, but it is not due under a writ of habeas corpus.[12]
¶ 222. In summary, by relying on the acts of conviction and sentencing, the lead opinion creates an ex post facto violation for Singh that is contrary to the constitutional precedent of the United States Supreme Court and of this court.[13]
*216 III. CONCLUSION
¶ 223. We continue to follow United States Supreme Court precedent in regard to defining ex post facto laws. Because the lead opinion does not do so and instead attempts to create an expanded definition of ex post facto law, I do not join the lead opinion in any respect. Furthermore, I agree with the court of appeals' conclusion that the procedural change in the duties of circuit courts did not contravene ex post facto prohibitions. Accordingly, I would reverse the court of appeals' decision in part; affirm it in part; and I respectfully dissent from the lead opinion herein.[14]

 Lead op., ¶¶ 36, 44, 47.

 Because Justice Rebecca G. Bradley ably discusses and decides this issue, I join her opinion in that regard rather than writing about this issue myself. See Justice Rebecca G. Bradley's dissent, ¶¶ 248-49.

 When an inmate who is serving a sentence imposed under s. 973.01 and who has earned positive adjustment time under s. 302.113, 2009 stats., or under s. 304.06, 2009 stats., has served the confinement portion of his or her sentence less positive adjustment time earned between October 1, 2009, and August 3, 2011, he or she may petition the sentencing court to adjust the sentence under this section, based on the number of days of positive adjustment time the inmate claims that he or she has earned.
Wis. Stat. § 973.198(1) (2011-12) (emphasis added).

 The amended judgment removed confinement and extended from Singh's sentence for the Waukesha County crime, converting his sentence to jail time. This may have resulted in the confinement for both Milwaukee County crimes to actually have been served concurrent with each other from the first day.

 The sentencing provisions for the two Milwaukee County crimes also could have resulted in the confinement for the August 10, 2011 crime beginning before the confinement for the July 25, 2011 crime. This was possible because the sentence for the July 25 crime was consecutive to the sentence for the Waukesha County crime, while the sentence for the August 10 crime was concurrent with the sentence for the Waukesha County crime. The first day of confinement for any crime was January 4, 2012.

 See U.S. Const. Art. I, §§ 9 and 10; Wis. Const. art. I, § 12.

 The lead opinion relies on State ex rel. Mueller v. Powers, 64 Wis. 2d 643, 221 N.W.2d 692 (1974), as did the court of appeals. Lead op., ¶¶ 63-66. That reliance is in direct contravention of State v. Thiel, 188 Wis. 2d 695, 703, 524 N.W.2d 641 *211 (1994) and of Collins v. Youngblood, 497 U.S. 37, 42 (1990), which we followed in Thiel. Similarly, the lead opinion relies on State ex rel. Eder v. Matthews, 115 Wis. 2d 129, 133, 340 N.W.2d 66 (Ct. App. 1983), for the proposition that "[a] law which increases or alters the punishment of an offender to his detriment, after he has been convicted and sentenced, constitutes an ex post facto law . ..." (emphasis omitted) (internal quotation marks omitted). Lead op., ¶ 45. However, Matthews solely relies on Mueller; therefore, Matthews also is in contravention of our subsequent holding in Thiel. See Matthews, 115 Wis. 2d at 133.

 The lead opinion cites Weaver v. Graham, 450 U.S. 24 (1981), as though it supports the broad definition of ex post facto laws that the lead opinion creates. Lead op., ¶¶ 39, 41, 47, 67. However, Weaver does not do so. Weaver employs the date the crime was committed as the act from which it measures whether a law is ex post facto. Weaver, 450 U.S. at 28.

 Lead op., ¶¶ 36, 44, 47.

 Id., ¶ 8.

 Id., ¶ 33.

 See Justice Ziegler's concurrence/dissent, ¶¶ 167-75.

 Lead op., ¶¶ 36, 44, 47.

 As the lead opinion acknowledges, remand is not appropriate as a majority of justices so conclude. Id., ¶ 1 n.l.