**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 14, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. §  808.10 and RULE 809.62.

**Appeal No.**     **2019AP772**

**STATE OF WISCONSIN**

Cir. Ct. No.  2017ME987

**IN COURT OF APPEALS
DISTRICT I**

IN RE THE COMMITMENT OF E.C.H.:


MILWAUKEE COUNTY,

　　　　PETITIONER-RESPONDENT,

　V.

E.C.H.,

　　　　RESPONDENT-APPELLANT.


　　　　APPEAL from an order of the circuit court for Milwaukee County: DAVID L. BOROWSKI, Judge.  *Dismissed*.

¶1     DONALD, J.[1]   E.C.H. appeals an order of the circuit court granting a WIS. STAT. ch. 51 extension order.   E.C.H. has since been released from his commitment.  Accordingly, we dismiss this appeal as moot.

## BACKGROUND

¶2     On September 15, 2017, E.C.H. was committed to inpatient mental health treatment pursuant to WIS. STAT. ch. 51 for a period of six months at the Milwaukee County Behavioral Health Division (BHD).     On or around November 10, 2017, E.C.H. was released from the BHD to outpatient status.  On March 9, 2018, Milwaukee County filed a motion to extend E.C.H.'s original commitment order, alleging that E.C.H. continued to be a proper subject for mental health treatment.

¶3     On March 14, 2018, the circuit court held an extension hearing where multiple witnesses testified.  Anne Wilkowski, a registered nurse for My Choice Family Care, an elective benefit for the Medicaid State Insurance Program, testified that E.C.H. had been enrolled in the program since 2012 or 2013. Wilkowski stated that E.C.H. was diagnosed with bipolar disorder and that E.C.H's symptoms are typically manic.   Wilkowski stated that E.C.H. is vulnerable to being taken advantage of and that E.C.H. also experiences auditory hallucinations.    Wilkowski also testified that E.C.H. is irregular with his medication because he believes his medication is "killing him."  Wilkowski also testified that after E.C.H.'s release in November 2017, E.C.H. was homeless and would often "couch surf[] with strangers he's met on the street."

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶4      Dr. Charles Rainey, a forensic psychiatrist appointed by the circuit court to evaluate E.C.H., testified that E.C.H. had schizoaffective disorder bipolar type, which Dr. Rainey classified as a treatable mental health condition. Dr. Rainey stated that E.C.H.'s symptoms include hallucinations, grandiose delusions, and disorganized thoughts. Dr. Rainey testified that E.C.H.'s particular medication "helps with his hallucinations and with his delusions, both the paranoid and the grandiose, and it also functions as a mood stabilizer." Dr. Rainey stated that E.C.H. would be a proper subject for commitment if treatment were withdrawn, telling the circuit court that his opinion was based on E.C.H.'s behavior following his previous discharge. Specifically, that E.C.H. "was given a place to live at Crisis and he walked away." Dr. Rainey also stated that E.C.H. cannot articulate why he does not trust his medications, only stating that the medications are "poison" and are "killing him."

¶5      E.C.H. also testified, telling the circuit court that he did not suffer from a mental illness, did not need medication, and did not want to remain committed. E.C.H. told the circuit court that he had previously attempted suicide and admitted to delusions, but stated that the delusions resulted from lack of sleep and nutrition. E.C.H. told the circuit court that he was homeless and would house hop. E.C.H. also told the circuit court that he was kicked out of one of the homes he stayed at because of "magical bullshit around [him]."

¶6      The circuit court found that E.C.H. had a treatable mental illness and that E.C.H. would be a proper subject for commitment if treatment were withdrawn. Specifically, the circuit court stated:

> He has presented dangerous behaviors, at least dangerous to himself. He's been homeless. He's not been taking care of himself. He's not been taking his medications, all of which could make his life and his

> functioning better.  Being homeless is a physical danger to himself, including it's still basically winter and you encounter people that can be a threat to your health, safety and welfare.

The circuit court ordered an extended commitment for twelve months.  E.C.H.'s commitment order underlying this appeal expired on March 14, 2019.  The County informed this court that on July 3, 2019, a new and subsequent commitment order was entered for E.C.H.  That order is not on appeal.

## DISCUSSION

¶7      On appeal, E.C.H. contends that the circuit court did not make an appropriate finding of dangerousness, pursuant to WIS. STAT. § 51.20(1)(am). Specifically, E.C.H. contends that the circuit court erroneously equated E.C.H.'s homelessness with dangerousness.  The County contends that because the commitment order underlying this appeal has expired, this appeal is moot.  We agree.

¶8      Mootness of a legal action or issue presents a question of law for our *de novo* review.  *See* ***PRN Assocs. LLC v. DOA***, 2009 WI 53, ¶25, 317 Wis. 2d 656, 766 N.W.2d 559.  An action or issue is moot when its determination "cannot have any practical legal effect upon a then existing controversy." ***Winnebago Cty. v. Christopher S.***, 2016 WI 1, ¶31, 366 Wis. 2d 1, 878 N.W.2d 109 (citation omitted).  Absent special exceptions, we decline to decide moot issues.  *See* ***State ex rel. Riesch v. Schwarz***, 2005 WI 11, ¶12, 278 Wis. 2d 24, 692 N.W.2d 219.

¶9      E.C.H. argues that his appeal is not moot because of multiple collateral consequences; specifically, E.C.H. contends that:  (1) there is a social stigma associated with involuntary commitment; (2) he is subject to a firearms

ban; and (3) there is a monetary liability associated with WIS. STAT. ch. 51 commitments. We are not convinced by E.C.H.'s arguments.

¶10 First, we recognize the impact that the social stigma associated with an involuntary commitment can have on an individual. However, at issue in this appeal is the order *extending* E.C.H.'s commitment—not the initial commitment order. Any social stigma E.C.H. would potentially endure stems from his initial commitment, not from an extension order. Moreover, E.C.H. has not alleged that he has suffered from any particular stigma associated with either his initial commitment or the extension of his commitment.

¶11 Second, a vacatur of the extension order underlying this appeal would not impact the firearms ban E.C.H. complains of. E.C.H. has two separate commitment orders that would leave him in the same situation. Accordingly, vacating this extension order would have no practical legal effect on E.C.H.'s firearm restriction.

¶12 Finally, as to E.C.H.'s alleged monetary liability, we conclude that E.C.H. has not shown an actual monetary liability for which he has been held responsible. E.C.H.'s argument is hypothetical. We decline to address this argument further.

¶13 Moreover, E.C.H. ignores the fact that vacating the extension order is not the equivalent of expunging the order. *See **Waukesha Cty. v. S.L.L.***, 2019 WI 66, ¶40, 387 Wis. 2d 333, 929 N.W.2d 140. In other words, even if we agreed that the circuit court erred in granting the extension order and we vacated the order, the order would "still be a matter of record; it would simply have no operative effect." *See **id.*** In other words, vacating E.C.H.'s now-expired extension order would have no practical effect. Whether we affirm the circuit

court or vacate the order, E.C.H. remains released from inpatient treatment (pursuant to the order on appeal) and the extension order would remain a matter of record.

¶14 E.C.H. also contends that his appeal, despite the expiration of the extension order, warrants a decision on the merits by this court because he has demonstrated that the facts of his case fall within the five specific circumstances in which we review otherwise moot issues. *See* ***State v. Leitner***, 2002 WI 77, ¶14, 253 Wis. 2d 449, 646 N.W.2d 341.[2] We disagree. E.C.H. challenges the circuit court's factual finding of dangerousness. Such a challenge is "necessarily [a] fact-bound inquir[y] that will vary from case to case." *See* ***S.L.L.***, 387 Wis. 2d 333, ¶41. Therefore, a decision in this case would not provide the type of guidance for circuit courts that E.C.H. requests, "nor would it preclude uncertainty in evaluation of [factual findings] in other cases." *See **id.*** Accordingly, there is no reason to deviate from the mootness doctrine in E.C.H.'s appeal. *See **id***.

¶15 For the foregoing reasons, we dismiss this appeal as moot.

---

[2] ***State v. Leitner***, states:

> [The court] will retain a matter for determination although that determination can have no practical effect on the immediate parties: Where the issues are of great public importance; where the constitutionality of a statute is involved; where the precise situation under consideration arises so frequently that a definitive decision is essential to guide the trial courts; where the issue is likely to arise again and should be resolved by the court to avoid uncertainty; or where a question was capable and likely of repetition and yet evades review because the appellate process usually cannot be completed and frequently cannot even be undertaken within the time that would have a practical effect upon the parties.

*Id.*, 2002 WI 77, ¶14, 253 Wis. 2d 449, 646 N.W.2d 341 (citation omitted.)

*By the Court.*—Appeal dismissed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.